Opinion by Judge BYBEE; Dissent by Judge O’SCANNLAIN.
OPINION
BYBEE, Circuit Judge:
Andre Burton was tried and sentenced to death for robbery and murder. Twice before trial and another two times during trial, Burton invoked his constitutional right to represent himself under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Each time, the judge denied the request because Burton needed time to prepare and asked that the trial be continued. On direct appeal, the California Supreme Court affirmed. Burton now seeks habeas- corpus relief based on the California Supreme Court’s rejection of his Faretta claim. We conclude, in this pre-AEDPA case, that the California Supreme Court’s decision was contrary to federal law, and we affirm the district court’s grant of the writ.
I
This case comes before us some thirty-two years after Burton was tried. During those years, Burton filed a direct appeal, was granted a state postconviction hearing, and filed a petition for a federal writ of habeas corpus. His state and federal proceedings are interwoven and .complicated, so we will work through the various proceedings in some detail.
A Pretrial and Trial Proceedings
Burton was arrested in February 1983 for robbery and for the murder of Gulsha-kar Khwaja. A month later, Ronald Slick was appointed as his counsel, and Burton and his co-defendant, Otis Clements, were arraigned in Los Angeles Superior Court. Both men pleaded not guilty, and trial was set for May 9.
In April, Slick-hired Kristina Kleinbauer to investigate Burton’s case. Slick gave Kleinbauer a memo with a list of investigative tasks he wanted done. Slick instructed Kleinbauer to conduct a background investigation of Burton and Clements, to determine Burton’s participation in the robbery and murder, and to interview other potential witnesses.
On May 9, Slick declared that he was not ready for trial and requested a continuance. The court severed Burton’s case from Clements’s and continued Burton’s trial to July 25. About a month later, in mid-June, Kleinbauer began interviewing witnesses.
*1136 When Kleinbauer interviewed Burton, Burton told her that Slick had not visited him at the county jail and that he was not satisfied with Slick’s representation in his case. Burton asked Kleinbauer if she could give him advice about what to do. Kleinbauer contacted a local attorney, Jeff Brodey, and Brodey told her that Burton could ask to dismiss his counsel and make a Faretta motion. Kleinbauer took notes, and gave Brodey’s advice to Burton in late July.[1]
On July 26 and’ again on August 2, Slick announced he was ready for trial, but both times the court trailed the case on its own motion. In the meantime, however, Klein-bauer was still interviewing witnesses. On July 25, she interviewed Susana Camacho, an eyewitness, who had told the police she thought the shooter was a white man. On August 8, she interviewed Michael Stewart, a former police officer who told her that the shooter ran right past him carrying a money bag. Stewart told her he was “definite about the fact that the man must have been older because of the gray in his beard.” The shooter “looked older than the driver, in his late thirties,” was at least six feet tall, and was approximately 180 to 190 pounds. (According to the arrest report, Burton was 19 years old, was just under six feet tall, and Weighed 160 pounds.)
On August 10, the case was assigned for trial to Judge D. Sterry Fagan. That same day, Kleinbauer gave a written report of the Camacho and Stewart interviews to Slick. When she gave him the reports, Slick did not tell her that Burton’s trial was already underway. She expected Slick to have her follow up on both witnesses and to contact other individuals who might have corroborated their accounts, but he never did so.
When Judge Fagan called Burton’s case on August 10, Slick informed the judge that Burton wanted to address the court. Burton then told the court:
Your Honor, I would like to represent myself due to the circumstances of lack of interest as far as the investigation is concerned with my case. There isn’t any that should have been taken care, of. I haven’t spent or had enough time to communicate with my lawyer because he haven’t given me the time, because he feel that to me it is not worth it to him, but to me it is worth it, because it is my life that is involved and I don’t want to take the fall for the real person in this crime.
The judge told Burton that Slick was an experienced, effective lawyer and then asked, “More importantly, you are not ready for trial today, are you?” Burton replied, “No, sir. I still rather take time to represent myself. I want to represent myself.” The judge then responded, “Well, in light of the fact that this matter is here for trial and the 60-day time limit runs Friday and you are not ready for trial, I am going to have to deny your request, Mr. Burton.” He added, “And, believe me, I am doing you a favor in doing that.”
The next day, Burton asked a second time to represent himself. He told the judge that he had just received the whole file of his case, that this was his first time ever getting any papers, arid that he kriew “for sure that we have á lack of interest [that] is really out of hand and the court is not paying attention to this.” He also told the judge that he suspected he was being *1137 framed by Clements, his alleged coeonspir-ator, and that he wanted to investigate his case because “Ron [Slick] is not really on my side for this case.” After Slick represented to the court that he had investigated Burton’s allegation that he was being framed by Clements, and told the court he was “as prepared as I know how to be,” the judge noted that Burton’s case had been pending for “almost the maximum period of time allowed to try these cases.” The judge repeated to Burton that “you do have a constitutional right to represent yourself, but that is not an unlimited right. You have that right only if you are ready for trial today.” Because Burton was “not ready today,” the judge denied his motion.
. A jury was sworn in on August 15, and trial began on August 16. The guilt phase trial took little more than a day. On the first day, after the court ruled on a motion to suppress Burton’s statement to the police, Slick reserved opening argument and the prosecution called five witnesses and put on its entire case-in-chief. Slick conducted very little cross examination of the prosecution’s witnesses. At the close of the prosecution’s case, Slick asked the judge for a recess so he could interview two witnesses.
After the judge excused the jury, Burton renewed his request to represent himself and “objected] ... to being represented by Mr. Ron Slick.” When Burton conceded that he was still not ready to proceed with trial, the court again denied his motion.
The next morning, Burton asked a fourth time to address the court. Before Burton could say anything, the judge told him:
Well, Mr. Burton, we have gone through this twice and I have indicated to you that I am not going to permit you to [proceed pro se] because you have indicated to me that you are not ready to proceed with the trial. If I am in error and if there is- a conviction in this case, the Appellate Court will certainly straighten it out, but I don’t see that any useful purpose would be served by going through the same conversation again.
Do you have anything new you want to add?
Burton responded that he did not, and the judge denied the motion for the last time.
The jury was then recalled and Slick rested without calling any witnesses. Closing arguments and jury instructions followed. Later the same day, the jury returned a guilty verdict.
Two days later, the entire penalty phase of the trial was conducted. Slick called just two character witnesses: Burton’s mother and a Los Angeles County deputy sheriff assigned to Burton’s area of the county jail. After a day and a half of deliberating, on August 23, 1983, the jury imposed the death penalty.
Some time later, Kleinbauer was surprised to learn that Burton had been sentenced to death. She was unaware that Burton’s trial had even started, and she was still actively investigating his case.
B. Direct Appeal to the California Supreme Court
Burton pursued an -appeal to the California Supreme Court, and the California Supreme Court affirmed the judgment in its entirety. See People v. Burton, 48 Cal.3d 843, 258 Cal.Rptr. 184, 771 P.2d 1270 (1989). In considering Burton’s Faretta claim, the court rejected Burton’s argument that the court was bound by our decisions holding that a Faretta motion made before the jury is empaneled must be granted unless it is shown that the motion was made for the purpose of securing delay. Id. at 1276 (citing Armant v. Marquez, 772 F.2d 552, 555 (9th Cir.1985); Fritz v. Spalding, 682 F.2d 782, 784 (9th Cir.1982); and Maxwell v. Sumner, 673 *1138 F.2d 1031, 1036 (9th Cir.1982)). The court considered the rule in these cases “too rigid in circumscribing the discretion of the trial court.” Id. at 1277.
Instead of applying the federal rule, the court applied its own precedents holding that a request is timely if made a “reasonable time” before trial but is “addressed to the sound discretion of the trial court” if made at a later time. Id. at 1275 (citing People v. Windham, 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187 (1977)). Applying that standard, the court found that Burton did not ask to represent himself a “reasonable time” before trial and that “[t]here was no abuse of discretion in the court’s denial of the motion.” Id. at 1277. On that basis, the court rejected Burton’s Faretta claim.
C. Initial Federal Habeas Petition
Burton filed his original petition fór a writ of habeas corpus in the district court in 1992. The • district court stayed- the federal . habeas proceedings, however, pending exhaustion of available state remedies. As the district court put it, “this case [then] lingered, largely because of proceedings in the California State Court system.” The stay would not be lifted until more than 16 years later, after Burton filed an amended federal habeas petition in 2008.
Í). State Postconviction Proceedings
After the federal habeas proceedings were stayed, Burton filed a state habeas petition with the California Supreme Court. Four years later, the California Supreme Court ordered the State to show cause why Burton should not be granted relief on his claim under People v. Frier-son, 39 Cal.3d 803, 218 Cal.Rptr. 73, 705 P.2d 396 (1985), that he was denied his right to put on a defense at the guilt phase of trial.
After both sides filed responses, the court appointed a referee to conduct an evidentiary hearing. The court directed the referee to make factual findings on 11 questions, including a question involving Burton’s purpose in seeking to represent himself. The sixth reference question asked: “Did Slick have reason to believe that Petitioner’s in court requests to represent himself were made for the purpose of delaying trial, rather than dissatisfaction with Slick’s trial strategy?”[2]
The referee conducted a fourteen-day hearing and submitted his report to the California Supreme Court in 2005. In response to the sixth reference question, the referee noted Slick’s testimony that Burton was “not emotionally ready to go to trial” and'that Burton’s four requests to represent himself did not indicate a dissatisfaction with Slick’s trial strategy. After reviewing the evidence and testimony at the reference hearing, the referee found that “Petitioner tried to delay the matter by seeking to represent himself, but those requests were denied.”
After receiving postreference briefs from -the parties, the California Supreme Court, in a published decision, rejected Burton’s Frierson'claim. In re Burton, 40 Cal.4th 205, 52 Cal.Rptr.3d 86, 147 P.3d 1014. The court agreed with the referee that Slick’s statements were corroborated by evidence in the record, and accordingly found that Burton’s “Faretta motions reflected a dissatisfaction with Slick’s failure to delay the trial, not a dissatisfaction with Slick’s trial strategy.” Id. at 1026. Two *1139 justices disagreed with the majority’s findings and dissented. See id. at 1033 (Werdegar, J., dissenting) (“While petitioner certainly indicated in connection with his four Faretta motions on August, 10 through 17 that he was not ready to go,to trial [pro se] and, did not believe the, defense case had yet been fully investigated, to read his comments as reflecting only a desire to delay trial, unrelated to any concern over the nature and quality of the representation Slick was providing, is objectively unreasonable.” (internal footnote omitted)).
E. Federal Habeas Proceedings
In 2008, Burton filed an amended federal habeas petition. The district court lift-' ed the stay and ordered the parties to brief Burton’s first claim—his claim that he was denied his Sixth Amendment right to self-representation under Faretta.
The State made no attempt to defend the California Supreme Court’s 1989 .decision applying California law to reject Burton’s Faretta claim. The State recognized that because Burton filed his original federal habeas petition before the effective date- of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Burton’s amended petition was governed by the pre-AEDPA. version of 28 U.S.C. § 2254. Accordingly, the State conceded that “the Ninth Circuit’s timeliness rule applies here, and Petitioner’s first two Faretta motions were timely unless they were made for the purpose of delay.”
Nevertheless, the State argued that the district court’s ability to apply the federal timeliness rule was significantly constrained by the California Supreme Court’s factual findings in, connection with its 2006 decision on Burton’s Frierson claim—in particular, the court’s finding that Burton’s Faretta motions reflected a dissatisfaction with Slick’s failure to delay trial. Citing former § 2254(d), the State argued to the district court that “[t]hese factual-findings regarding Petitioner’s purpose for making his Faretta motions are presumed correct. on federal, habeas, review.” In light of these factual findings, the State contended, the district court was required to conclude that the California courts’ denial of Burton’s Faretta motions was consistent with federal law.
After, considering the parties’ briefs, the district court granted relief on Burton’s Faretta claim, The district court agreed with the State that, under pre-AEDPA law, Burton’s claim wag governed by this Court’s decision in Fritz. Accordingly, because the California Supreme Court had “applied its own less accommodating-timeliness standard,” rather than the federal standard, the district court determined that the California Supreme Court’s rejection of Burton’s Faretta claim was “clearly erroneous.” The district court thus undertook to determine the timeliness of Burton’s Faretta requests in the first instance.
The district court determined that it was not required to defer to any finding by the California Supreme Court that Burton’s requests were, motivated by delay. In the district court’s view,, the ;question.of Bur-top’s purpose in seeking to represent himself was a mixed question of fact and law subject to de novo federal review. The district court also rejected the referee’s crediting of Slick’s testimony and discounting of Burton’s, testimony (and the testimony of Slick’s investigator, Kristina. Kleinbauer) because those credibility findings lacked a sufficient basis in the record.[3]
The district court reviewed the transcript of Burton’s four Faretta hearings and found that Burton had complained *1140 that “there was a lack of interest in conducting adequate pre-trial investigation; there had been inadequate communication between him and his lawyer; and Mr. Slick did not believe it was worthwhile to meet with him.” The district court determined that the reference hearing testimony corroborated Burton’s stated reasons.
For example, the district court noted that although Slick had told the trial judge that he had looked into Burton’s statements about Otis Clements, Burton’s alleged coconspirator, the testimony at the reference hearing, including Slick’s own testimony, revealed that “[n]o investigation, beyond reading the police reports, had been done either into Clements’s statements or his background.” The district court also found that Burton “knew that his lawyer was not pursuing a complete investigation prior to the commencement of trial and that he was not even contacting witnesses who might present evidence contrary to the prosecutor’s narrative of events.” The district court found that “Slick did not take even the most de minimis steps” in challenging highly questionable witness identifications and “effectively ignor[ed] the information provided to him by his investigator.”
As for Burton’s statement in a declaration that he had observed that other inmates’ death penalty cases were taking longer, the district court concluded that “this statement is actually consistent with Petitioner’s complaints that his lawyer was not conducting adequate investigations and did not care about his case. Even the investigator, Ms. Kleinbauer, was surprised to- find out Mr. Slick had commenced the trial so quickly, given that he knew her investigation was incomplete.”
In light of these findings, the district court found that “Petitioner’s stated reasons for asserting his right to self-representation were legitimate and riot made solely for the purpose of delay.” Thé district court concluded that Burton’s Faretta request was timely and accordingly gave the State 120 days to either release Burton from custody or grant him a new trial.
The State timely appealed, and the district court granted the State’s request to stay its judgment pending resolution of this appeal.
II
We review de novo a district court’s grant or’ denial of habeas corpus relief. Sanders v. Ratelle, 21 F.3d 1446, 1451 (9th Cir.1994). Wé review the district court’s, resolution of legal questions de novo, and we review the district court’s findings of fact for clear error. Seidel v. Merkle, 146 F.3d 750, 753 (9th Cir.1998); see also Sanders, 21 F.3d at 1451-52; Fed. R.Civ.P. 52(a).
Because Burton filed his federal habeas corpus petition before AEDPA’s effective date, we apply the former-version of 28 U.S.C. § 2254 and pre-AEDPA law. See Thomas v. Chappell, 678 F.3d 1086, 1100-01 (9th Cir.2012). Under pre-AEDPA law, a state court’s determinations of pure questions of law and mixed questions of law and fact are subject to de novo federal review. Sanders, 21 F.3d at 1451. The state court’s findings of fact are ordinarily subject to deference, however, and are presumed to be correct unless they fall within one of eight exceptions listed in former § 2254(d).[4]
*1141 III
We must determine' whether the California courts’ rejection of Burton’s Faretta claim was contrary to “the Constitution or laws ... of the United States.” 28 U.S.C. § 2254(a) (1994). Under the nonretroactivity rule announced in Teague v. Lane, we review state court decisions according to federal law as it existed at the time the petitioner’s conviction became final on direct review. 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (holding that “new constitutional rules of criminal procedure will not be applicable to [state criminal] cases which have become final before the new rules are announced”).
We proceed in two steps. First, we address whether the California courts’ decision to deny Burton his Faretta rights was contrary to decisions of the United States Supreme Court. Because we conclude that it was not, we then ask whether that decision was contrary to our own contemporaneous decisions. We conclude that the California courts’ decision was contrary to the federal Constitution, as interpreted by our cases. <
A. Supreme Court Laiv
We first consider whether the decisions of the United States Supreme Court dictate the result in this case. What we said nearly two decades ago is still true today: “The only Supreme Court decision to discuss the timeliness of a request to proceed pro se is the Faretta decision itself.” Moore v. Calderon, 108 F.3d 261, 265 (9th Cir.1997).
In Faretta, the Supreme Court noted that the defendant had asked to proceed pro se “weeks before trial” and then held that “[i]n forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the -California courts deprived him of his constitutional right to conduct his own defense.” 422 U.S. at 835-36, 95 S.Ct. 2525 (emphasis added). Because we viewed the timing element as essential to the Court’s holding in Faretta, we determined in Moore that, after Faretta, the Supreme Court had clearly established that a request to proceed pro se is timely if made “weeks before trial.” Moore, 108 F.3d at 265.
Thus, had Burton asked to represent himself weeks before trial arid had the trial court denied his request as untimely, we would conclude that the denial was contrary to Faretta and would issue the writ on that basis. Burton did not make his request weeks before trial, however; he made it days before trial—three court days before the jury was empaneled, to be exact. Thus, Faretta does not clearly entitle Burton to relief.[5]
*1142 B. Circuit Law
Although the Supreme Court’s decision in Faretta does not entitle Burton to relief, this does not end our inquiry. Under the prior version of § 2254, a federal court could issue a writ of habeas corpus" “only on the ground that [the -state prisoner] is in custody in violation of the Constitution or laws or treaties of the United States.” 28 U.S.C. § 2254(a) (1994). The current version of § 2254 restricts the “violation of the Constitution” that federal courts can remedy to violations of “clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1) (emphasis added). There was no such restriction in the-prior law. Accordingly, as we- observed, “[u]nder the old version of § 2254(d), we look to the decisions of the Supreme Court and of this court in - deciding whether- a -writ should issue.” Moore, 108 F.3d at 264 (emphasis added); see also Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (explaining that “[AEDPA] restricts the source of clearly established law to- th[e Supreme] - Court’s jurisprudence” whereas former § 2254, as interpreted by Teague, did not). We turn now to the state of our own circuit law in 1989, the year Burton’s conviction became final on state direct review.
1. Fritz is controlling law
The law in this circuit was clear. Before Burton’s conviction became final—indeed, before Burton was even arrested—-we held in Fritz v. Spalding that “a motion to proceed pro se is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay.” 682 F.2d at 784 (citing Maxwell, 673 F.2d. at 1036). We clarified that “[d]elay per se is not a sufficient ground for denying a defendant’s constitutional right of self-representation” and that a defendant “may not be deprived of that right absent an affirmative showing of purpose to secure delay.” Id.
In Fritz, the Washington Court of Appeals had found that the petitioner’s Faret-ta motion “was a tactic ‘to delay his scheduled trial and obstruct the orderly course of the administration of justice.’” Id. at 784 (quoting State v. Fritz, 21 Wash.App. 354, 585 P.2d 173, 180 (1978)). Nevertheless, we concluded that the state court’s purpose-to-delay finding was not entitled to deference because “material facts were not adequately developed” and the state court hearing did not afford him a full, fair, and adequate hearing on the issue. Id. at 785 (citing former 28 U.S.C. § 2254(d)(3) and (d)(6)). We noted that “much of the evidence adduced at the hearings [wa]s pertinent to [the petitioner’s] motivation,” but “[t]he evidence [wa]s incomplete” because “[n]either [the trial judge nor the court of appeals] made an express inquiry into [the petitioner’s] purpose.” Id. Because the district court had also applied the wrong legal standard, we remanded to the district court for a determination of the purpose to delay question under the correct standard. Id.
Three years after our decision in Fritz, and still four years before Burton’s conviction-became final on direct review, we concluded that the California Court of Appeal failed to follow Fritz and, accordingly, we granted the writ. See Armant, 772 F.2d at 554. We noted in Armant that the situation there “differed] from Fritz in a most significant way.” Id. at 556. Whereas the state court in Fritz had found that the request was a delay tactic, we observed in Armant that “the state appellate court did not find , that the motion was a tactic to delay trial” and “nowhere in the record [wa]s there even a suggestion that *1143 Armant made this request for the purpose of delay.” Id. On these facts, we concluded, Armant’s request was timely as a matter of law. Id.
We have subsequently held that Fritz constitutes established federal law for purposes of former § 2254. See Moore, 108 F.3d at 264 (noting that Fritz and Armant “compel our decision” in pre-AEDPA cases); see also id. (“Although our ‘jury empanelment’ rule for the timeliness of Faretta motions might have been a ‘new rule’ when it was announced in 1982, it was not a new rule for Moore because it was announced before his conviction became final.” (citations omitted)); id. (noting that “[i]n at least two cases, ... we have granted the writ when a California court failed to follow the ‘jury empanelment’ rule” (citing Armant, 772 F.2d at 558, and Maxwell, 673 F.2d at 1036)).
We thus proceed to consider whether the trial judge’s denials of Burton’s Faret-ta requests and the California Supreme Court’s affirmance of those denials were contrary to our decision in Fritz.
2. The California trial court failed to apply Fritz
Burton’s trial judge did precisely what Fritz said not to do: he denied Burton’s pre-empanelment request to proceed pro se on the sole ground that Burton was not ready for trial and would need a continuance. Burton asked to represent himself four times, and on all four occasions the trial judge denied his request on this ground.
Burton first asked to represent himself on August 10, 1983—three court days before the jury was empaneled. The judge, after first telling Burton that it would be a big mistake to proceed pro se, asked, “More importantly, you are not ready for trial today, are you?” When Burton answered that he was not, the judge responded, “Well, in light of the fact that this matter is here for trial and the 60-day time limit runs Friday and you are not ready for trial, I am going to have to deny your request, Mr. Burton.”[6]
Burton then cited Faretta and told the judge, “It is my absolute right to represent myself,” and the court again responded, “I am aware of that fact, if you were ready for trial today. You are not ready for trial today.” After conferring with trial counsel, the court then spoke again with Burton:
The Court: Mr. Burton—and I ask you this reluctantly—are you ready to go to trial and represent yourself right now, if I—
Defendant: No, Your Honor, I am requesting more continuance. I am not ready, Your Honor, at this time.
The Court: All right. Fine. You have your record, Mr. Burton. If I am wrong and you are right, the Appellate Court will take care of it. I am going to deny your motion.
*1144 The next day, Burton asked to-represent himself a second time. The trial judge told him:
Well, Mr. Burton, first of all, you do have a constitutional right to represent yourself, but that is not an unlimited right. You have that right only if you are ready for trial today. And you have, told me again and again that you are not ready for trial today. This matter was scheduled for trial and has been pending for almost the maximum period of time allowed to try these cases.
After Burton persisted, the trial judge stated, “Okay, Mr. Burton, I am going to deny your motion for a continuance—I think that is part of your motion—and for self-representation on the basis that you are not ready today.”
During the trial, Burton asked to proceed pro se two additional times. The first time, the judge again inquired, “Are you ready to proceed today?” When Burton once again answered that he was not, the judge denied the motion. The second and last time Burton asked, the judge responded, ‘Well, Mr. Burton, we have gone through this twice and I have indicated to you that I am not going to permit you to go in pro per because you have indicated to me that you are not ready to proceed with the trial.”
The trial court never found, or even suggested, that Burton’s requests were insincere or were a mere delay tactic. Cf. Moore, 108 F.3d at 264 (“[T]he trial court made no finding that Moore’s [pre-empanelment] request was a tactic for delay, and the récord does not suggest that it was such a tactic. Thus, under our case law, Moore’s request was timely, and he is entitled to the writ.”); Armant, 772 F.2d at 556 (“[N]owhere in the record is there even a suggestion that Armant made this request for the purpose of delay; Armant was in jail at the time the motion was made and would apparently have remained there throughout the period of any continuance.”). It is thus clear that the trial court’s rejection of Burton’s requests was contrary to established Sixth Amendment law in this circuit.
3. The California Supreme Court failed to apply Fritz
Although the- trial court’s decision was certainly contrary to our holding in Fritz, we must also consider whether the error was cured on appeal. See Dyer v. Calderon, 151 F.3d 970, 979 n. 11 (9th Cir.1998) (en banc) (considering whether the California Supreme Court “cure[d] the inadequacy of the trial court’s hearing” and concluding that “[b]ecause the California Supreme Court’s findings were grounded in the same incomplete record as the trial court’s, its findings are no more entitled to a presumption of correctness”). Burton appealed the trial court’s denial of his Faretta requests to the California Supreme Court, and the California Supreme Court affirmed in a published decision, which we now consider.
The California Supreme Court applied its own state law for determining the timeliness of Faretta requests. Under the California standard, “[i]n order to invoke an unconditional right of self-representation, the defendant must assert the right ‘within a reasonable time prior to the commencement of trial.’ ” Burton, 258 Cal. Rptr. 184, 771 P.2d at 1275 (quoting People v. Windham, 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187, 1191 (1977)). “A motion made after this period is addressed to the sound discretion of the trial court.” Id. In exercising that discretion, trial courts are “to consider the ‘quality of counsel’s representation of the defendant, the defendant’s prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be *1145 expected to follow the granting of such a motion.’” Id. 258 Cal.Rptr. 184, 771 P.2d at 1276 (quoting Windham, 137 Cal.Rptr. 8, 560 P.2d at 1191-92).
Because Burton first asked to represent himself just three court days before the jury was empaneled, which, in the court’s view, was less than a “reasonable time prior to the commencement of trial,” the court determined that Burton did not have an unconditional right to self-representation. Id. 258 Cal.Rptr. 184, 771 P.2d at 1275. Addressing the factors a trial court is to consider, the court noted that “[a]l-though [Burton] apparently had not shown a previous proclivity for substituting counsel,” other factors supported the trial court’s decision. Id. 258 Cal.Rptr. 184, 771 P.2d at 1277. For example, the court found:
Defense counsel had represented defendant for six months, since the preliminary hearing, and defendant had had several court appearances in which he could have invoked his right to represent himself. Defendant asserted he was not ready to go to trial and needed an unspecified period for preparation.
Id. 258 Cal.Rptr. 184, 771 P.2d at 1276. The court concluded that “[u]nder the circumstances, the motion was clearly directed to the sound discretion of the trial court.” Id.
Burton argued that the court “should follow the federal rule,” but the court declined to do so. Id. After correctly reciting the federal rule, and citing Armant, Fritz, and Maxwell, the court stated that “[t]he federal rule, though it calls motions timely until the jury is impaneled, may in practice differ' little from our own rule.” Id. This was so, the court explained, because “[t]he fact that the granting of the motion will cause a continuance, and that this will prejudice the People, may be evidence of the defendant’s' dilatory intent.” Id. Thus, the court reasoned, although “[i]n the instant case[ ] ... the motion would be termed timely under the federal rule, the trial court would still have discretion-to deny the motion if it considered it entered for the purpose of delay.” Id.
Practical similarities aside, the court acknowledged some significant differences between the California rule and the federal rule. First, the court recognized that the California rule shifted the burden from the government to the defendant. Under the California rule the burden is on the defendant to explain his delay, whereas under the federal rule a pre-empanelment request is. timely unless the. government shows that the request was a delay tactic. Id. 258 Cal.Rptr. 184, 771 P.2d at 1276-77. Second, when the defendant makes the request shortly before the jury is to be empaneled, the California rule leaves the decision to grant the request to the trial court’s sound discretion, whereas the federal rule does not. Id. 258 Cal.Rptr. 184, 771 P.2d at 1277; see also Armant, 772 F.2d at 555 (stating that, under the federal rule, “[i]f the[] [Fritz] criteria are met, then a defendant’s motion to represent himself should be granted”).[7]
Given these differences, the California Supreme Court rejected the federal rule: *1146 “To the extent that there is a difference between the federal rule and the California rule,” the court stated, “we find the federal rule .too rigid in circumscribing the discretion of the trial court and adhere to the California rule.” Burton, 258 Cal.Rptr. 184, 771 P.2d at 1277. The. court thus affirmed the trial court’s decision as an exercise of discretion and made no finding as to whether Burton’s request was a mere delay tactic. Id.
The California Supreme Gourt’s decision was contrary to Sixth Amendment law established in Fritz and Armant. See Moore, 108 F.3d at 264. Indeed, at the time of the California Supreme Court’s decision, we had already held that California state court decisions applying: the California Supreme Court’s 'Windham standard contravened the federal law set forth in Fritz. See Armant, 772 F.2d at 555-56. The California Supreme Court justified its disregard of the federal rule on the ground that state courts “are of course not bound to follow the authority of the federal courts of appeals.” Burton, at 1277 n. 2. But while that may now be true under AEDPA, it was not true before AEDPA. See Moore, 108 F.3d at 264 (holding that Fritz and its progeny “establishing a ‘jury empanelment’ rule for timeliness compel our decision” in pre-AEDPA cases and that, therefore, “California’s argument that ha-beas relief is bai’red by Teague v. Lane has no merit” (citation omitted)); see also Avila v. Roe, 298 F.3d 750, 753 n. 3 (9th Cir.2002) (“Although both the state superi- or court and the state appellate court applied the California rule, we are obligated to follow the Ninth Circuit rule.”).
. 4. The district court was .entitled to apply Fritz in the first instance
In sum, the trial court’s repeated denials of Burton’s Faretta requests , and the California Supreme Court’s, decision affirming those denials were contrary to our decisions in Fritz and Armant. Because neither court made any finding that Burton’s requests were a mere delay tactic, it was appropriate for the district court to determine the timeliness of Burton’s Faretta motions in the first instance. See Fritz, 682 F.2d at, 786 (holding that “facts material to Fritz’s feonstitutional claim were not adequately developed in state court and that Fritz [wa]s thus entitled to an evidentiary hearing in federal district court to determine whether his motion to proceed pro se was made as a tactic to delay the start of trial” (emphasis added)); Maxwell, 673 F.2d at 1036 & n. 5 (deferring to the district court’s finding, on habe-as review of a state court decision, that Maxwell’s motion was hot made for the purpose of delay).
IV
In the usual case, having determined that the state court failed to apply the proper analysis and make the necessary findings of fact required by fedeiral law, we would now simply review the district court’s determination of those issues under the usual standards of appellate review. This, however, is not the usual case.
Seventeen years, after its decision on Burton’s direct appeal, the .California Supreme Court determined that .Burton’s lawyer, Ronald Slick, had reason to believe that Burton asked to proceed pro se for the purpose of delaying trial. The State argues that although the district court was entitled to determine the timeliness of Burton’s Faretta motions, the district court was required under former 28 U.S.C. § 2254(d) to defer to this finding by the California Supreme Court.
For the reasons we explain below, however, the district court did not have to defer to this finding. The California post-conviction proceedings only inquired whether, for purposes of Burton’s Frier-son claim, Slick had refused to present the *1147 defense Burton wanted and whether Slick believed Burton sought to delay trial because of a breakdown in the attorney-client relationship. Burton’s Frierson proceedings, as we explain, did not ask whether Burton intended to delay, only whether Slick thought that was Burton’s intent.
A. Applicability of Former § 2254(d)
Under former 28 U.S.C. § 2254(d), state court findings of fact are “ ‘presumed to be correct’ in a federal habeas corpus, proceeding unless one of eight enumerated exceptions applies.” Miller v. Fenton, 474 U.S. 104, 105, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (quoting 28 U.S.C. § 2254(d)). If the presumption of correctness applies, it is the petitioner’s burden to show by convincing evidence that the state court’s findings were erroneous. 28 U.S.C. § 2254(d) (1994). If one of § 2254(d)’s exceptions applies, however, the state court’s factual determinations will not be presumed correct and the district court must try the facts anew. Fritz, 682 F.2d at 785.
The district court did not consider whether the exceptions applied here because it concluded that § 2254(d) did hot apply. In the district court’s view, “whether or not [Burton]’s motives were dilatory” was not a question of fact, but a mixed question of law and fact subject to de novo federal review. See Cuyler v. Sullivan, 446 U.S. 335, 342, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (questions of law and mixed questions of law and fact not subject to § 2254(d)’s presumption). In this regard, we think the district court was incorrect.
Our decisions have uniformly treated the determination of a petitioner’s purpose in seeking to represent himself as a question of fact. In Fritz, for example, we explicitly recognized that a state court’s finding of purpose to secure delay is “entitled to deference in a federal habe-as proceeding.” Fritz, 682 F.2d at 785. Accordingly, we considered the § 2254(d) exceptions and ultimately concluded that “no deference [wa]s' warranted” in that case under two exceptions: § 2254(d)(3) (material facts not adequately developed in state court) and § 2254(d)(6) (petitioner not afforded a full, fair, and adequate hearing). Id.
In Maxwell, we treated another state court’s finding of purpose to delay in a similar .manner. See 673 F.2d at 1033, 1035-36, As in Fritz, we recognized that, as a general rule, “[t]he district court in a habeas corpus proceeding must presume that the state trial court’s factual determinations are correct.” Id. at 1035 (citing 28 U.S.C. § 2254(d)). We nevertheless agreed with the, district court that “nothing in the record supported” the state court’s determination that the petitioner’s request was made for the purpose of delay. Id. at 1035-36. The state court’s findings thus fell under § 2254(d)’s last exception: (d)(8) (finding not fairly supported by the record). Id.
It is true, ¿s Burton argues, that “ ‘basic, primary, or historical facts’ are the ‘factual issue[s]’ to which the statutory presumption of correctness dominantly relates.” Thompson v. Keohane, 516 U.S. 99, 110, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (alteration in original) (quoting Miller, 474 U.S. at 112, 106 S.Ct. 445). But the Supreme Court has recognized that § 2254(d)’s presumption may apply to questions that go beyond mere “basic, primary, or historical facts.” These questions often involve “individual-specific deci-siones]” that are “unlikely to have prece-dential value,” and often “depend[ ] heavily on the trial court’s' appraisal of witness credibility and demeanor.” Id. at 111, 114, 116 S.Ct. 457; see, e.g., Wainwright v. Witt, 469 U.S. 412, 429, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (juror impartiality); *1148 Maggio v. Fulford, 462 U.S. 111, 117, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (per curiam) (defendant’s competency to stand trial); Collazo v. Estelle, 940 F.2d 411, 416 (9th Cir.1991) (en banc) (defendant’s knowing and intelligent waiver of Miranda rights).
Whether a petitioner’s Faretta request is motivated by delay is just such a question of fact. Determining that fact will be different for each petitioner and will depend on the court’s assessment of the totality of the petitioner’s conduct both before and after the request to determine whether the petitioner’s actions “are consistent with a good faith assertion of the Faretta right.” Fritz, 682 F.2d at 784. Indeed, for these same reasons, we concluded in Maxwell that we would review the district court’s determination of no purpose to delay as a finding of fact:
The [district court’s] finding[ ] that Maxwell’s] ... motion was not made for the purpose of delay [is] based on the fact-finding tribunal’s experience with the mainsprings of human conduct, and on its experience in conducting'trials and observing defendants’ behavior. We therefore, review the district court’s determinations as findings of fact, which, although based solely on documentary evidence, will be set aside only if clearly erroneous.
673 F.2d at 1036 (citation and internal quotation marks omitted); see also United States v. Smith, 780 F.2d 810, 812 (9th Cir.1986) (holding that “[t]he [district] court’s findings, including the ultimate finding of intent [to delay], were not clearly erroneous”).
Accordingly, the district court erred when it treated the purpose to delay question as a mixed question of law and fact. Nevertheless, we may uphold the district court’s decision to decide that factual question de novo if Burton shows or “it ... otherwise appear[s]” that one of § 2254(d)’s eight exceptions applies. 28 U.S.C. § 2254(d) (1994); see also Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (“We may affirm on any ground supported by the record, even if it differs from the rationale used by the district court.”).
B. Exceptions ‘to § 225b(d)’s Presumption of Correctness
Burton argues that the district court was not required to presume that his requests were a mere delay tactic because, under § 2254(d)(1), the merits of that factual dispute were not résolved in the state postconviction hearing and, under § 2254(d)(2) and (d)(6), he was denied a full, fair, and adequate state court hearing on the issue. We agree with both contentions.[8]
1. Burton’s Frierson proceedings did not resolve whether Burton’s sole purpose was to delay trial
Most fundamentally, the district court was not required to presume that Burton asked to represent himself for the sole purpose of delaying trial because the merits of that factual issue were not resolved in Burton’s Frierson proceedings. See 28 U.S.C. § 2254(d)(1) (1994); see Chacon v. Wood, 36 F.3d 1459, 1465 (9th Cir.1994) (holding that there was “no relevant state court finding to which deference was due under 28 U.S.C. § 2254(d)” because the state court’s “findings [we]re not responsive to [the petitioner] contention”). Indeed, that factual issue was not even relevant tó Burton’s Frierson claim.
*1149 Before we can explain why the California Supreme Court’s Frierson findings did not resolve the timeliness of Burton’s Far-etta, claim, a brief overview of the Frierson decision is in order. At issue in Frierson was a defense counsel’s decision—over a defendant’s strenuous objections—not to present a particular defense at the guilt phase of trial, but to reserve that defense for the penalty phase. 218 Cal.Rptr. 73, 705 P.2d at 399-400. The California Supreme Court held that the issue was “whether a defense counsel’s traditional power to control the conduct of a case includes the authority to withhold the presentation of any defense at the guilt/special circumstance stage of a capital case, in the face of a defendant’s openly expressed desire to present a defense at that stage.” Id. 218 Cal.Rptr. 73, 705 P.2d at 401. As the court observed, “this issue is quite distinct from the question whether trial counsel provided competent representation.” Id.
In Frierson’s 'case, the court had “little doubt that trial counsel’s actions reflected his . judgment as to the most promising trial strategy,” id. 218 Cal.Rptr. 73, 705 P.2d at 402, but nevertheless held that “counsel could [not]- properly refuse ’ to honor [the] defendant’s clearly expressed desire to present a defense at that stage,” a right that was related to a defendant’s Sixth Amendment right to “‘personally ... make his defense.’ ” Id. 218 Cal.Rptr. 73, 705 P.2d at 403 & n. 4 (quoting Faretta, 422 U.S. at 819, 95 S.Ct. 2525). The court
emphasize[d] that [its] holding rests on the fact that the record in this case expressly reflects a conflict between defendant and counsel over whether a defense was to be presented at the guili/special circumstance stage____ Thus, nothing in this opinion is intended to suggest that—in the absence of such an express conflict—a court is required to obtain an on-the-record, personal waiver from the defendant whenever defense counsel, chooses to rest without putting on a defense.
Id. 218 Cal.Rptr. 73, 705 P.2d at 405 n. 8. The court thus reversed Frierson’s penalty judgment. Id. 218 Cal.Rptr. 73, 705 P.2d at 406.
As the California Supreme Court explained in Burton’s postconviction proceedings, “Frierson means that ‘a defense counsel’s traditional power to control the conduct of a case does not include the authority to .withhold the presentation of any defense at the guilt/special circumstance stage of a capital trial when the defendant openly expresses a desire to present a defense at that stage, and when there exists credible evidence to support that defense.’” In re Burton, 52 Cal. Rptr.3d 86, 147 P.3d at 1020 (quoting People v. Milner, 45 Cal.3d 227, 246 Cal.Rptr. 713, 753 P.2d 669, 681 (1988)). A defendant’s Frierson right, comes into play “only in [the] case of an express, conflict arising between the defendant and. counsel.” Id. (quoting People v. Bradford, 15 Cal.4th 1229, 65 Cal.Rptr.2d 145, 939 P.2d 259, 318 (1997)).
When the California Supreme Court referred Burton’s postconviction claims to a referee for findings, it did not ask the referee to rule on Burton’s Faretta claim. Instead, it asked the referee for findings on Burton’s Frierson claim. These are different inquiries, representing different rights, although there may be some overlap. See Frierson, 218 Cal.Rptr. 73, 705 P.3d at 403 & n. 4. Accordingly, when the referee issued 'his findings, he necessarily focused on what Slick believed Burton wanted him to do with respect to trial strategy, not whether or why Burton wished to represent himself.
The California Supreme Court made that quite.'clear to the referee. Here is the sixth reference question put to the referee: “Did Slick have reason to believe that Peti *1150 tioner’s in court requests to represent himself were made for the purpose of delaying trial,, rather, than dissatisfaction with Slick’s trial strategy?” The first six .words of that question are critical. Did Slick have reason to believe? The question could have asked about Burton’s purpose directly, but instead, consistent with Frier-son, it asked about what Slick had reason to believe about Burton’s purpose and whether there was a conflict between them. The referee could not have been clearer on this point: “What difference does it make [what Burton was thinking]? The question is what’s going on in Slick’s mind, not Mr. Burton’s mind.”
The referee’s findings were confined by the limited scope of the question. The referee began his response to the sixth reference question by focusing on Slick’s testimony. Slick testified that Burton told him, he was “not ready to go to trial” and “[c]ouldn’t present a reason” and that Slick '“did not believe that Petitioner’s requests to represent himself on four occasions in August 1983 indicated a dissatisfaction with Mr. Slick’s trial strategy.” The referee then pointed to Slick’s stated belief that Burton was “not emotionally ready to,go to trial qt that time.” So far, the^e findings go directly to what Slick, had reason to believe and only indirectly to what Burton’s actual purpose was. As evidence of Burton’s motivation, this evidence would be hearsay.
The referee then looked to whether other evidence corroborated Slick’s statements. The referee pointed, first of all, to Burton’s statement that other death row inmates tended to have their cases contin- • ued longer, a conclusion that was unsurprising since Slick had already asked for a continuance in his case. He also noted that Burton had refused to meet’ on one occasion with Dr. Michael Maloney, a psychologist hired by Slick,[9] The referee found that Burton’s statement and Burton’s refusal to meet with the psychologist “suggested]” that Burton was not “truly interested in vigorously defending his case.” These findings áll support the referee’s ultimate finding, in response to the reference question, that Slick did have reason to believe Burton’s requests to represent himself were made for the purpose of delaying trial, and not because Burton disagreed with Slick’s strategy.
The California Supreme Court’s own findings are similarly limited. After noting Slick’s testimony that “it is not unusual for defendants to prefer to delay trial and to give the appearance of being able to ‘wait it out,’ ” and that “Burton, who was facing a capital trial, was such a defendant,” the court then proceeded to discuss whether “Slick’s assessment of Burton’s motivation was corroborated by other evidence at the healing.” In re Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1026. Although the court found that Burton’s “game playing” with the psychologist and his statement that other inmates with death penalty cases all tended to have their cases continued longer were “fully consistent with a defendant who was interested in delay for delay’s sake,” those statements must be read in context. In context, the court was identifying evidence that “corroborated” “Slick’s assessment of Burton’s motivation” and *1151 that refuted Burton’s argument that “the only reasonable inference to be drawn from his Faretta motions [wa]s that he wanted to defend against the state’s case.” Id. (internal quotation marks omitted).
The court thus made clear that Burton’s Faretta motions were considered only for the purpose of determining,-whether, they would “support Burton’s Frierson claim.” Id.Id. 52 Cal.Rptr.3d 86, 147 P.3d at 1025; see also id.also id. 52 Cal.Rptr.3d 86, 147 P.3d at 1026 (“Burton’s Faretta motions reflected a dissatisfaction with Slick’s failure to delay the trial, not a. dissatisfaction with Slick’s trial strategy.”). Concluding that it was possible for Slick to infer that Burton was motivated by delay is not the same as concluding that Burton actually intended to delay trial for delay’s sake.
To be sure, some of the referee’s and the California Supreme Court’s findings seem to go directly to Burton’s actual motives. For example, the referee concluded his response to the sixth reference question by. stating, “Petitioner tried to delay the matter by seeking to represent himself, but those requests were, denied.” Similarly, the California Supreme Court concluded that “Burton plainly was dissatisfied with the imminent approach of his capital trial, and Slick was aware of the fact his client was dissatisfied.” . Id.Id. 52 Cal.Rptr.3d 86, 147 P.3d at 1029.
But saying that Burton “tried to delay the matter” or was “dissatisfied with the imminent approach of his. capital trial” does not mean that the requests were a “tactic to secure delay.” Fritz, 682 F.2d at 784. Fritz made it clear that a mere showing that-a defendant wants to delay trial is not enough:
Delay per se is not a sufficient ground for denying a defendant’s constitutional right of self-representation. Any motion to proceed pro se that is made on the morning of trial is likely to cause delay; a defendant may nonetheless have bona' fide reasons for not asserting his right until that time, and he may not be deprived of that right absent an affirmative showing of purpose to secure delay.
Id. (citation omitted). There is a very important distinction between wanting to delay trial for legitimate reasons and wanting to delay trial for the purpose of securing delay.[10] Moore wanted to delay trial, see Moore, 108 F.3d at 262 (Moore asked for a continuance “to prepare for trial”), and so did Armant, Armant, 772 F.2d at 554-55 (Armant asked for three weeks to prepare and answered “no” when the trial judge asked if h¿ was “prepared to go to trial in’ this matter today”). Yet in both cases we ’ concluded' that nothing in the record suggested that the requests were made solely for the purpose of delay. See Moore, 108 F.3d at 264; Armant, 772 F-2d at 556; see also id. at 556 n. 1 (explaining that the petitioner’s legitimate purpose throughout the proceedings “was to be afforded an opportunity to conduct his defense as he thought best”).
Here, no one questions that Burton wanted to delay trial; he clearly did. The question is why he wanted to delay trial— did he have legitimate, good faith reasons, or was this a bad-faith attempt on his part to delay trial for, the mere purpose of *1152 delaying trial? In our view, the California Supreme Court never conclusively answered this question, in large measure because the court was focused on a different question.
If anything, the' California Supreme Court’s opinion and the referee’s' report both suggest that the delay was not Burton’s sole purpose and that Burton in fact did ask to delay trial fon-legitimate reasons. The California Supreme Court found that Burton “seemed focused on investigating all possible avenues of defense, including defenses of alibi. and mistaken identification.” In re Burton, 52 Cal. Rptr.3d 86, 147 P.3d at 1028; cf. Armant, 772 F.2d at 556 n. 1. And the referee found that “the credible evidence adduced at the Reference Hearing was that Petitioner was concerned about how quickly his case was moving forward and that he thought that Mr. Slick was not devoting enough time to his case.” Cf. Moore, 108 F.3d at 262 (Moore told his judge “that he had doubts about his court-appointed lawyer” and, on another occasion, “engaged in a lengthy discussion” with the court “about his dissatisfaction with his lawyer and his desire to represent himself’). Although these findings were not enough to establish a Frierson claim, they positively support Burton’s contention that his Faretta requests were not a tactic to secure delay. See Fritz, 682 F.2d at 784.
The State argues that the referee properly determined Burton’s subjective purpose in seeking to represent himself and that the California Supreme .Court accepted that determination. In particular, the State contends that the sixth reference question actually does put at issue Burton’s purpose, notwithstanding the question’s express focus on Slick’s understanding. This is so, the State argues; because “Slick testified at the reference hearing that he could only answer reference question No. 6 on the basis of Petitioner’s statements to Slick.” Thus, “any factual findings regarding Petitioner’s statements to Slick, and the corresponding inferences that could be drawn from those statements as to- Petitioner’s actual motive to delay the trial, were properly encompassed within the scope of the reference question.”
We do not doubt that the sixth reference question encompassed the possible “inferences that could be drawn” from Burton’s statements. It is hard to imagine how else a factfinder would go about determining whether Slick had reason to believe that Burton’s Faretta requests wére made for the purpose of delaying trial rather than for the purpose of expressing a desire to present a defense. But Fritz does not ask whether invoking Faretta with a purpose to delay is a permissible “inference that could be drawn” by a single person, the petitioner’s lawyer; it asks whether the defendant’s actual and sole purpose was to delay trial and instructs that the defendant’s purpose is to be determined from the totality of the circumstances both leading up to and following the request. See id. at 784-86. Under Frierson, the question is entirely different—the question is, as the referee candidly put it, “what’s going on in Slick’s mind, not [what’s going on in] Burton’s mind.”
We thus conclude that the merits of Burton’s actual purpose in seeking to represent himself were not decided in the Frierson proceedings. Under § 2254(d)(1), then, the district court was not required to presume that Burton’s request was a mere delay tactic.
2. Burton’s Frierson proceedings did not afford a full, fair, and adequate hearing oh his purpose in seeking to represent himself
Even if the California Supreme Court had found that Burton’s Faretta motions were a mere delay tactic, Burton never *1153 received a full, fair, and adequate hearing on that issue. See 28 U.S.C. § 2254(d)(2) (“factfinding procedure ... not adequate to afford a full and fair hearing”), (d)(6) (“applicant did not receive a full, fair, and adequate hearing”) (1994). The Frierson proceedings were inadequate to fully and fairly resolve Burton’s Faretta claim for at least three reasons.
a. The burden of proof was not placed on the government
Few things are more integral to the fairness of a court’s factfinding procedure than placing the burden of proof on the right party. Yet here, by proceeding under Frierson instead of Faretta, the State shifted the burden of proof from the State, where it belongs, to Burton, where it does not belong.
As we explained in Fritz, the burden is on the State, not the defendant, to .make “an affirmative showing” that a defendant’s pre-empanelment Faretta request is made for the purpose of delaying trial. Fritz, 682 F.2d at 784;. see also id, (“[A] motion to proceed pro se is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay.” (emphasis added)); Moore, 108 F.3d at 264 (same).
Frierson reverses that burden of proof. As the California Supreme Court made clear in Burton’s case, it was Burton’s burden to prove his Frierson claim. See In re Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1022 (accepting Slick’s account of events “because Burton, despite offering an array of objections, fails to identify a convincing rationale for rejecting it”); id. 52 Cal.Rptr.3d 86, 147 P.3d at 1028 (agreeing with the referee that “Burton failed to rebut, by a preponderance of the evidence, Slick’s testimony that he had discussed his trial strategy at the guilt phase with Burton and that Burton did not object to it”); id. 52 Cal.Rptr.3d 86, 147 P.3d at 1029 (discussing the “defendant’s burden in establishing a Frierson claim”). This difference in burden of proof is reason alone not to apply the presumption of correctness in this case.
In many cases, the burden of proof could completely determine the outcome of the constitutional claim. Indeed, this cáse is a good example. Because there was no express, on-the-record conflict over defense strategy, Burton had to take.the position that the “only reasonable inference to be drawn from his [statements] is that he wanted to defend against the state’s case.” Id. 52 Cal.Rptr.3d 86, 147 P.3d at 1026 (internal quotation marks omitted). Under this demanding burden, if the evidence shows that his actions were consistent with an intent to delay for delay’s sake, he fails to meet his burden and loses.
By contrast, the Sixth Amendment inquiry places the burden of proof on the State and requires the court to “examine the events preceding the motion, to determine whether they are consistent with a good faith assertion of the Faretta right.” Fritz, 682 F.2d at 784. If the evidence shows that the petitioner’s actions were consistent with an intent to delay for legitimate reasons (such as a conflict with counsel as to the adequacy of pretrial investigation), the State fails to meet its burden and loses.
Given that the State bears the burden of proving that a defendant’s Faretta motion was-a delay tactic, it would be manifestly unfair to bind Burton to an adverse factual determination made in proceedings in which he bore the burden of proof and the State got the benefit of the doubt.
b. The proper legal standard was not applied
In addition to placing the burden of proof on Burton, the California Supreme Court never considered the timeliness of *1154 Burton’s Faretta motions under the proper legal standard. In Fritz, we described the proper inquiry as follows:
In determining whether a defendant’s request to defend himself is a tactic to secure delay, the court may, of course, consider the resulting effect of delay. A showing that a continuance would be required and that the resulting delay would prejudice the prosecution may be evidence of a defendant’s dilatory intent— The inquiry, however, does not stop there. The court must also examine the events preceding the motion, to determine whether they are consistent with a good faith assertion of the Faretta right and whether the defendant could reasonably be expected to have made the motion at an earlier time.
682 F.2d at 784-85. Fritz thus requires courts to “consider the totality of the circumstances leading up to [the] Faretta motion and the effect that granting the motion would have had on the proceedings.” Avila, 298 F.3d at 753.
Neither the referee nor thé California Supreme Court considered any of these factors. Of course, there is no reason why they should have—the court was deciding a Frierson claim, not deciding whether a Faretta motion was timely. Indeed, the California Supreme Court even emphasized that it would consider the referee’s findings “only insofar as they are relevant to [the court’s] analysis of Burton’s claim that he was denied the right to present his desired defense under Frierson.” In re Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1019.
Whatever their reasons, the bottom line is that the California courts never considered the timeliness of Burton’s Faretta requests under thé proper inquiry. It was thus not only appropriate but necessary for the district court to conduct the proper inquiry in the first instance. See Fritz, 682 F.2d at 784-85 (holding, under former § 2254(d)(6), that the state court’s finding that Fritz’s Faretta motion “was a tactic to delay his scheduled trial” was not entitled to a presumption of correctness because the state court did not “ma[ke] an express inquiry into Fritz’s purpose, ... focusing instead on the nature- of the Faretta right and on- Fritz’s ability to waive knowingly his right to counsel” (citation and internal quotation marks omitted)); cf. Pierce v. Cardwell, 572 F.2d 1339, 1342 (9th Cir. 1978) (holding that it was necessary for the district court to conduct an evidentiary hearing because “certain statements by the [state] trial judge ... create[d] doubt as to whether he applied the correct test in determining whether Pierce had waived his rights after requesting an attorney”).
To be clear, we do not hold that Burton’s Frierson proceedings were inadequate to resolve his Frierson claim; we only hold that the Frierson proceedings were inadequate to resolve his Faretta claim. A state court hearing may be full, fair, and adequate as to one issue, but not full, fair, and adequate as to another. The Seventh Circuit’s decision in Allen v. Buss, 558 F.3d 657 (7th Cir.2009), illustrates this point. Allen, the petitioner, sought state postconviction relief on the ground that his execution was prohibited by Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Id. at 662. The Indiana Supreme Court rejected the Atkins claim, reasoning that because the trial court had given little weight to Allen’s claim of mental disability as a mitigating factor, Allen had already “had a full and fair opportunity to litigate the issue of whether he is mentally retarded” for Atkins purposes. Id. (citation and internal quotation marks omitted). On federal ha-beas review, the State maintained that “the Indiana courts found Allen to be not mentally retarded and — that such findings are presumed correct on habeas review.” Id. at 663.
*1155 The Seventh Circuit disagreed. It noted, first, that “the trial court’s analysis makes clear that it engaged in a substantively different inquiry from that mandated by Atkins.” Id. It then noted that the state’s sentencing order did not conclude that Allen was not mentally disabled; it instead found that Allen’s evidence showed “a very slight mitigating factor” that was insufficient to overcome other aggravated circumstances. Id. Thus, the court concluded, “Because the Indiana state courts never considered Allen’s evidence using the proper Atkins inquiry (which would have required them to apply the appropriate standard for mental retardation), it is objectively unreasonable to conclude that Allen had a ‘full and fair’ hearing on his Atkins claim.” Id. at 664.
Just as the state court failed to consider Allen’s Atkins claim under the proper inquiry, the California Supreme Court has never considered the timeliness of Burton’s Faretta requests under the proper inquiry. Nor can we assume that the California Supreme Court implicitly did so, for it was deciding Burton’s Frierson claim, not his Faretta claim, and thus had no reason to consider the required factors outlined in Fritz.
No California court has-ever considered Burton’s Faretta claim under the proper federal standard. Because we only presume a state court’s findings to be correct if the test used to reach those findings was correct, see Fritz, 682 F.2d at 785; Pierce, 572 F.2d at 1342, Burton was entitled to have the district court resolve the timeliness of his Faretta claim under the proper substantive inquiry.
c. Key aspects of the record were not considerad
Not only did the California Supreme Court not resolve the timeliness of Burton’s Faretta motions under the proper legal standard; it also declined to consider facts material to the federal timeliness rule, “Failure to consider key aspects of the record is a defect in the fact-finding process.” Taylor v. Maddox, 366 F.3d 992, 1008 (9th Cir.2004).
In Frierson, the California Supreme Court held that a capital defendant’s trial counsel is required to comply with a defendant’s clearly expressed desire to present a guilt-phase defense, at least where there is credible evidence to support that defense) 218 Cal.Rptr. 73, 705 P.2d at 403. In Burton’s case, because there was no “clear and express conflict over defense strategy” on the trial court record, In re Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1021, Burton faced a steep uphill battle. He had to prove that his statements to Slick and Kleinbauer, together with his statements on the record—including his four Faretta motions—amounted to a clear, open, and unequivocal expression of his desire to present a defense. Id.Id. 52 Cal.Rptr.3d 86, 147 P.3d at 1021-29; see id.see id. 52 Cal.Rptr.3d 86, 147 P.3d at 1028 (“[W]e reiterate that a defendant must clearly and openly—and, thus, unequivocally—express a desire to present a particular defense in order to establish a violation of Frierson.”). In order to show that his Faretta requests amounted to an unequivocal expression of his desire to present a defense, Burton had to prove that such a desire was “the only reasonable inference to be drawn” from his in-court statements. Id. 52 Cal.Rptr.3d 86, 147 P.3d at 1026 (emphasis added) (internal quotation marks omitted).
In contrast to the Faretta timeliness inquiry, where the defendant’s purpose is all that matters, under Frierson it is defense counsel’s understanding of the defendant’s wishes that matters. See id.See id. 52 Cal.Rptr.3d 86, 147 P.3d at 1028-29 (explaining that the purpose of the clear-expression requirement is to “provide[] counsel with the necessary signal of the *1156 defendant’s wishes concerning his or her defense” and to “reduee[ ] the likelihood of extensive»after-the-fact debate as to what those wishes might have been” (emphasis added)). Accordingly* the key issue on Burton’s Frierson claim was not whether Burton wanted to present a defense or whether he wanted to represent himself for other legitimate reasons; it was whether Slick was on notice that Burton wanted to present a defense. Frierson and Faret-ta recognize different interests defendants have.' A defendant may admire his attorney for his skill but disagree with the strategy; that is a Frierson problem, but not a Faretta problem. On the other hand, a defendant may agree with his attorney on the strategy but believe the attorney is lazy or incompetent; that is a Faretta problem, but not a Frierson problem.
That only Frierson was at issue in Burton’s state postconviction proceedings is borne out by the questions the California Supreme Court posed to the referee. All of the questions addressed, in one way or another, whether Burton put Slick on notice that he wanted a guilt phase defense. None of the questions addressed Burton’s subjective desire to represent himself. Indeed, none of the questions required any determination of Burton’s state of mind— his'intentions, his purpose, his good or bad faith. Rather, the questions focused on what Burton told Slick, what Slick knew or believed, and what Slick heard Burton tell the trial judge on the record. For example, the court asked the referee:
1. Did petitioner give attorney Ron Slick ... the names of witnesses he believed should be interviewed and tell Slick that those witnesses could support a guilt phase defense or defenses? ...
2. Did petitioner tell Slick that petitioner’s purported confession had ' been falsified? ...
6. Did Slick have reason to believe that petitioner’s in court requests to represent himself were made for the purpose of delaying trial, rather than dissatisfaction with Slick’s trial strategy?
Id.Id. 52 Cal.Rptr.3d 86, 147 P.3d at 1018-19 (emphasis added).
The referee apparently got the message. At the hearing, Burton testified that Klein-bauer was not the first person who told him that he could demand to represent himself. When the State’s attorney asked Burton when he had first learned that he could do so, Burton’s attorney objected to the question as irrelevant and beyond the scope. The referee agreed: “I just continue to fail to see the relevance there.... Advice he got from persons other than Kleinbauer seems to ... me to be very irrelevant.” The referee may very well have been right that the timing of when Burton learned that he could seek to represent himself was irrelevant to the Frier-son claim. We express no opinion on that issue. But surely such evidence would be relevant to determining whether Burton’s request to represent himself was made in good faith. See Fritz, 682 F.2d at 784.
Just as the referee excluded evidence relevant to the Faretta timeliness inquiry, the California Supreme Court disregarded such evidence when it was raised by Burton. For example, even though Burton’s statements to the trial judge suggested that Burton was interested in pursuing additional investigation of his case, the court found those statements irrelevant to its analysis under Frierson because Burton “never expressed a desire to Slick that any particular defense be presented.” In re Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1028. The court then added:
Burton instead seemed focused on investigating all possible avenues of defense, including defenses of alibi and mistaken *1157 identification-, but clearly and openly expressed a desire only that all of these investigations be completed before trial. Frierson, however, does not require that an attorney defer to a client’s wishes as to the scope or duration of pretrial investigation. The reasonableness of the attorney’s investigation is ..., as the parties concede, beyond the scope of the order to show cause.
Id. Once again, the court may well be right that án attorney-client dispute over the reasonableness of pretrial investigation is irrelevant to a Frierson claim. But it can hardly be denied that a conflict oyer the scope of pretrial investigation is relevant to the purpose-to-delay question under Faretta. See Armant, 772 F.2d at 554 (finding no evidence of purpose to delay where Armant complained of difficulties with his attorney, including his attorney’s failure to subpoena a witness and give him a. copy of the preliminary hearing transcript); Fritz, 682 F.2d at 785 (remanding to the district court for an- evidentiary hearing because the state court had not adequately developed facts material to the purpose-to-delay inquiry, including “when it became clear that Fritz and [his trial counsel] had irreconcilable differences”).
This was not the only instance in which the court discarded facts that may have been irrelevant to the Frierson inquiry but that were clearly relevant to the Faretta inquiry. See, e.g., In re Burton, 52 Cal. Rptr.3d 86, 147 P.3d at 1024 (“Kleinbauer’s recollection of Burton’s statements ... does not indicate that he clearly expressed a desire to present a defense as opposed to a desire for further investigation before a final tactical decision could be made.”); id. 52 Cal.Rptr.3d 86, 147 P.3d at 1025 (rejecting argument that Burton’s Faretta requests constituted a clear request to present a defense because “his comments were mostly directed to the question whether counsel had adequately investigated”). Perhaps most notably, the court even affirmatively found that “[t]he record ... supports Kleinbauer’s testimony that Burton was dissatisfied with Slick.” Id. 52 Cal. Rptr.3d 86, 147 P.3d at 1023. Although this would surely be relevant to the Faret-ta inquiry, see Fritz, 682 F.2d at 785, the California Supreme Court dismissed it, noting that “Kleinbauer’s testimony, however, does not support Burton’s claim that he openly expressed a desire to present a defense, nor does it undermine Slick’s testimony that he had discussed trial strategy with Burton.” In re Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1023.
In any event, even if the California Supreme Court had considered evidence going' to Burton’s actual reasons for seeking to represent himself, the process would still have been unfair to Burton. Because Burton’s state of mind was not directly relevant to his Frierson claim and was not submitted as an issue for the referee to decide, Burton was not given fair notice that the Frierson proceedings would effectively decide his Faretta claim. Under these circumstances, we cannot say that the Frierson proceedings gave Burton a full, fair, and adequate hearing on the timeliness of his Faretta requests. See Lankford v. Idaho, 500 U.S. 110, 121, 111 S.Ct. 1723, 114 L.Ed,2d 173 (1991) (fair notice is “the bedrock of any constitutionally fair procedure”).
The State’s arguments fail to convince us that the Frierson proceedings weré adequate to resolve the timeliness of Burton’s Faretta requests’. The State first argues that it was Burton who, in his state habeas petition, “placed the question of his actual motivation in seeking self-representation at issue.” True, Burton’s petition did allege “that [he] had sought on four occasions during the trial to discharge his attorney and represent himself because of Attorney Slick’s deficiencies.” In re Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1017 *1158 (citation omitted). But in context, that allegation was clearly intended to support Burton’s- primary allegation that “both Slick and the trial court knew the attorney’s actions were contrary to Petitioner’s express wishes.” Id. (internal quotation marks omitted). That, is, Burton, was alleging that his four requests to discharge Slick and represent himself because of Slick’s deficiencies constituted his “express wish” to put on a defense. The California Supreme Court clearly understood this context, as it framed its sixth reference question with regard to what Slick had reason to believe about Burton’s motives in asking to represent himself.
The State also points to two instances in the reference hearing that, it claims, show that Burton “had a full and fair opportunity at the reference hearing to litigate the issue of his actual purpose in requesting self-representation.” In the first, Burton’s attorney asked Kleinbauer whether Burton had told her “that he wanted to represent himself in order to delay the trial,” to which Kleinbauer answered that he had not. (Just before this testimony, Klein-bauer testified that Burton had told her that “the pace of the investigation, the fact that there was more to do, was one of the factors that led to his dissatisfaction [with Slick].”) In the second, Burton was asked on direct whether he told Slick about his reasons for seeking self-representation, to which Burton answered that he had told Slick the reason was “because the investigation in my case wasn’t completed.”
But these questions only show that some facts that would have been relevant to Burton’s Faretta claim were developed; this falls far short of showing that the facts were fully developed such that Burton received a full, fair, and adequate hearing on that claim. Cf. Fritz, 682 F.2d at 785 (state court’s purpose-to-delay finding not entitled to a presumption of correctness even though “much of the evidence adduced at the [state court] hearings is pertinent to Fritz’s' motivation”). Even as we acknowledge that some Faretta-rele-vant facts were developed in the reference hearing, the State has not shown that any of these material facts were actually considered by the California Supreme Court. Quite to the contrary, the court expressly declined to consider such evidence. See, e.g., In re Burton, 52 Cal.Rptr.3d 86, 147 P.3d at 1028 (acknowledging that Burton “seemed focused on investigating all possible avenues of defense” but concluding that “[t]he reasonableness of the attorney’s investigation is ..., as the parties concede, beyond the scope of the order to show cause”).
To summarize, we conclude that the district court was entitled to determine Burton’s purpose in seeking to represent himself. We reach this conclusion for two independent reasons. First, “[t]here was ... no relevant state court finding to which deference was due under 28 U.S.C. § 2254(d).” Chacon, 36 F.3d at 1465; see 28 U.S.C. § 2254(d)(1) (1994). The California Supreme Court only found that Slick had “reason to believe” Burton’s purpose was to delay trial; it did not and, in fairness to Burton, could not find that Burton actually intended to delay trial for the mere sake of delay.
Second, the Frierson proceedings before the California Supreme Court did not afford Burton a full, fair, and adequate hearing, on the timeliness of his Faretta requests. See 28 U.S.C. § 2254(d)(2), (d)(6) (1994), A full, fair, and adequate hearing would have placed the.burden of proof on the State, not Burton; would have afforded Burton notice that he was litigating his actual purpose in seeking to represent himself; and would have deemed relevant evidence of what’s going on in Burton’s mind, not just “what’s going on in Slick’s *1159 mind.” More fundamentally, a full, fair, and adequate hearing would have applied the actual inquiry required for resolving the timeliness of Faretta requests. See Fritz, 682 F.2d at 785 (state court’s purpose-to-delay finding not entitled to a presumption of correctness under § 2254(d)(6) in part bécause state courts made no “inquiry into Fritz’s purpose”); id. at 784-85 (setting out the proper inquiry); cf. Allen, 558 F.3d at 663. The State does not contest that the California Supreme Court applied an entirely different inquiry, and we find its arguments that Burton was on notice that he was litigating two claims for the price of one wholly unpersuasive. To the extent the California Supreme Court’s decision on Burton’s Frierson claim can be read as determining the ultimate factual issue of Burton’s intent in asking to represent himself, that determination is not entitled to a presumption of correctness.
V
Having determined that the district court was .not bound by any. relevant state court finding, we now review the district court’s determination of. the timeliness of Burton’s Faretta requests. A request to represent oneself must be accepted so long as the request is unequivocal, timely (i.e., made before the jury is empaneled), and not intended to secure a delay in the proceedings. Armant, 772 F.2d at 555 (citing Fritz, 682 F.2d at 784). The State does not dispute that Burton’s requests were unequivocal and made before the jury was empaneled; thus, the requests were “timely as a matter of law unless [they were] a tactic to secure delay.” Id.
Based on its own review of the record evidence, the district court concluded that Burton’s “stated reasons for asserting his right to self-representation were legitimate and not made solely for the purpose of delay.” Aside from the State’s argument, which we have already rejected, that the district court was bound by the California Supreme .Court’s factual findings, the State does not contend that the district court’s finding was erroneous. Because, however, granting the writ means’ sending this ease for'retrial nearly thirty-two years after the original trial—a formidable task—we review'the district court’s finding on the merits 'even though the State has waived the issue.
We review a district court’s determination that a Faretta motion was not a delay tactic for clear error. See, Maxwell, 673 F.2d at 1036 (reviewing a “district court’s determination that a motion was not a delay tactic] as [a] finding[ ] of fact, which, although based solely on documentary evidence, will be set aside only if clearly erroneous”). Under that standard, we will reverse the district court’s findings of fact only if we have “a definite and firm conviction that a mistake has been made.” Sepulveda v. Pac. Mar. Ass’n, 878 F.2d 1137, 1139 (9th Cir.1989).
The district court did not clearly err in finding that Burton’s Faretta requests were made for legitimate, not purely dilatory, reasons. As the district court correctly noted, it is not enough for the State to show the defendant would need a continuance in order to prepare his own defense. See Fritz, 682 F.2d at 784. Of course, the district court may consider whether trial would be delayed and whether such a delay would prejudice the prosecution, as well as whether the petitioner could reasonably have been expected to make the Faretta motion at an earlier time. Id. at 784-85. But these factors are not dispositive. District courts must consider the totality of the circumstances to determine whether the petitioner’s sole purpose in seeking to proceed pro se was to delay the proceedings. See Avila, 298 F.3d at 753.
*1160 The district’Court found that “Petitioner’s requests to be allowed to proceed pro se were based on his complaints that[ ] Mr. Slick was proceeding too fast; further investigation still needed to be conducted; and Mr. Slick had barely met with him since the case began.” If these were indeed Burton’s reasons, they were certainly legitimate reasons. A desire to have one’s case fully investigated is clearly a good reason for wanting to delay a capital murder trial. See Armant, 772 F.2d at 554, 556 & n. 1 (concluding that “nowhere in the record is there even a suggestion that Armaht made this request for the purpose of delay” where Armant complained that his attorney failed to subpoena a witness and provide him with a copy of a hearing transcript). And so is dissatisfaction with counsel. See Moore, 108 F.3d at 262, 264 (concluding that “the record d[id] not suggest” that “Moore’s request was a tactic for delay” where Moore, had told the trial judge “that he had doubts about his court-appointed lawyer” and had engaged in, a lengthy discussion with the judge “about his dissatisfaction with his lawyer and his desire to represent himself’); Fritz, 682 F.2d at 785 (remanding for the district court to determine “when it became clear that Fritz and [his counsel] had irreconcilable differences”).
The record firmly supports the district court’s finding that these were in fact Burton’s reasons. The best evidence of Burton’s reasons for asking to represent himself is the transcript of Burton’s four Faretta motions. When Burton first moved to represent himself, he told the court: '
Your Honor, I would like to represent myself due to the circumstances of lack of interest as far as the investigation is concerned with my case.' There isn’t any that should have been taken care of. I haven’t spent or had enough time to communicate with my lawyer because he haven’t given me the time, because he feel that to me it is not worth it to him, but to me it is worth it, because it is my life that is involved and I don’t want to take the fall for the real person in this crime. ‘
These are the very reasons noted by the district court: “Mr. Slick was proceeding too fast; further investigation still needed to be conducted; and Mr. Slick had barely met with him since the case began.”
. When Burton renewed-his request the next day, his dissatisfaction with Slick was obvious. He told the court that Slick’s “lack of interest” was .“really out of hand” and that “[t]his is my reason for wanting to. represent myself.” He also told the court, “I haven’t even seen Ron Slick. I see Ron Slick every time I come to the court and I am tellin’ him the real, but all I am gettin’ is the fake, the frame.” He also reiterated his belief that his case had not been fully investigated:
I am—this is not my crime.... I want to investigate my case and find out all about the things) because the investigator that investigated this case told me personally that something is shaky about my case and that Ron is not really on my side for this case and she wanted to be with me, to work with me, because she know that it is something about this case that is very shaky.
Burton was persistent. Six days after his second request, he renewed his request again. He objected “to being represented by Mr. Ron Slick” and moved “to resubmit the conflict of interest motion filed verbally on Mr. Slick.”
A year and a half after the trial, Burton signed a declaration in connection with his motion for a new trial. Burton stated that Slick only came to see him once, for fifteen minutes, when he was incarcerated at the county jail. Slick did come to visit him in the courthouse before hearings, but those meetings lasted no more than ten minutes. *1161 Burton recalled that when he told Slick that he did not commit the crime and that he did not confess, Slick said he did not believe Burton. Burton stated that August 10 was his first opportunity to make a statement to the court, and that on that day he told Slick that he fielb the case was not sufficiently prepared to go to trial. He explained, “Í did know from our investigator that a witness had been located who gave a different description of the person who did the shooting of Mr. and Mrs. Khwaja, and I wanted to know why that witness had not been subpenaed [sic] to come to court.”
Burton’s statements are corroborated by other evidence in the record. At the reference hearing, Slick testified that he hired Kristina Kleinbauer to investigate the case and gave her a list of tasks, including numerous witnesses to interview. Those witnesses included Otis Clements, family members,- probation officers, parole officers, and other people who might have known Burton. Slick testified, further, that he considered the tasks that he had outlined for Kleinbauer to be necessary to the pretrial investigation of Burton’s case. Yet when asked whether interviews of family members, probation officers, parole officers, and others had been conducted at the time he announced ready for trial, Slick testified, “I think not.” And .when asked if, at the time he announced ready for trial, “there really had been no investigation into the background of Otis Clem-: ents,” Slick answered, “I’m sure that’s correct, yes.” Kleinbauer’s testimony was consistent with Slick’s—she testified that by the time trial began she had not yet obtained' a background. history of .Otis Clements and, in fact, had not done any investigation regarding Clements. Thus, there is ample evidence to support the district court’s finding that “[n]o investigation, beyond reading the police reports, had - been done either into Clements’s statements or his background.”
Slick told Burton’s trial judge just the opposite. When Burton first asked to represent himself, Slick told the court that he had “investigated this case to the best of [his] ability.” When Burton asked again the next day, Slick told the court, “I can only indicate to the court that I am prepared for trial and I am as prepared as I know how to be. I see no reason to do anything other than try the case.” The judge then asked, “I take it that you have investigated his allegation that he is being framed by the co-defendant, Mr. Clements, in this case?” ‘Tes, I have,” Slick replied.
That the investigation was complete was news to Kleinbauer.' She said that when she handed Slick a report on August 10— the day Burton first asked to proceed pro se—she had no idea that the trial was already underway. In fact, she said, “[she] was still actively engaged in the investigation of the case when [she] learned that Mr. Burton had been convicted of capital murder and the jury had handed out the death penalty.”[11]
Burton was clearly aware that, his case had not been fully investigated. This is apparent, first of all, from Burton’s in-court statements. It is also apparent from Kleinbauer’s testimony at the reference hearing. The California Supreme Court *1162 credited Kleinbauer’s testimony that “Burton had told-her he was not ready to go to trial and that he was dissatisfied with Slick because the trial seemed to be rushing forward.” Id. 52 Cal.Rptr.3d 86, 147 P.3d at 1026 (alteration and internal quotation marks omitted). It also credited her statement in a 1993, declaration that she had talked with Burton before the trial .and “had instructed Burton to tell Slick that he was not ready for trial, and that the trial should take, place next year some time, after all the investigation was done.” Id. (emphasis added) (internal quotation marks omitted). These findings may have been insufficient to establish a Frierson claim, but they, are enough to .establish that Burton had legitimate reasons for seeking to represent himself.
The record also, corroborates Burton’s statements that there was-a breakdown in the attorney-client.relationship. Slick testified that Burton was “angry with me. He didn’t like me, probably didn't like anything about me.” When he told Burton early on that they were “going to lose the [case],” Burton “did not like it,” and “from then on, there was never a good conversation.” According to Slick, Burton’s attitude became “evasive and uncooperative” and Slick couldn’t “really get meaningful communication with him.” When Klein-bauer was asked at the reference hearing whether Burton had told her why he wanted to represent himself, she answered that “[h]e felt dissatisfied with his attorney” because “there was more investigation that needed to be done.” For this reason, she testified, Burton asked her “what he could do.” She did not know‘what to do, so she called Jeff Brodey, a lawyer.
Kleinbauer wrote down what Brodey told her, and her notes are in the record. These notes are valuable, because they provide hard proof that verifies Burton’s and Kleinbauer’s statements that Burton complained to Kleinbauer about Slick. The notes tell Burton to demand to be heard on the record, tell him that he has a constitutional right to represent himself under á case called Faretta, and tell him not to accept Slick as co-counsel because he has a “conflict of interest” with Slick and wants his attorney removed.
In sum, the trial court transcript and the evidence at the reference hearing demonstrate, in the words of the district court, “that [Burton] wanted to be free from having .Mr. Slick as his attorney, and that he had a compelling basis for that desire.” The district court thus did not clearly err in finding that Burton’s Faretta requests were made for legitimate reásons.
According due deference to the district court’s factual findings, we affirm the district court’s conclusion that Burton’s Faretta requests were timely, as. a matter of law. Maxwell, 673 F.2d at 1036. Because “[a]n improper denial of a request to proceed pro se ... is not amenable to harmless error analysis,”, the Sixth Amendment requires that Burton receive a new trial. United States v. Maness, 566 F.3d 894, 896 (9th Cir.2009) (per curiam) (internal quotation marks omitted).
VI
Under our precedents, there is little question that the California Supreme Court’s 1989 decision in Burton’s case was contrary to federal law. The California Supreme Court expressly declined to apply the purpose-to-delay inquiry we announced in Fritz, and we have held that Fritz is binding federal law for purposes of former § 2254. See, e.g., Moore, 108 F.3d at 264.
The more difficult question here is whether the district court was bound by the California Supreme Court’s finding, seventeen years later and in the context of a different claim, that Burton’s lawyer had reason to believe Burton was motivated by delay. We hold that the district court was *1163 not bound by this finding. The California Supreme Court never made a finding on Burton’s actual motives and, even if it had, it improperly shifted the burden of proof to Burton, applied the wrong legal inquiry, and failed to consider evidence that was highly relevant to the correct inquiry. Under these circumstances, we cannot say that Burton received a full, fair, and adequate hearing on his Faretta claim.
We accordingly affirm the district court’s determination that Burton’s Faret-ta motion was timely and that his conviction and sentence must be set aside. The State shall, within the time prescribed by the district court, either release Burton or grant him a new trial.
AFFIRMED.

. Kleinbauer testified that, to the best of her knowledge, she passed along Brodey’s advice to Burton on July 29, and the State has not disputed that testimony. The next time Burton appeared in court after July 29 was August 10—the day Burton first asked to' represent himself. *

. This question was apparently intended to resolve whether Burton’s Faretta requests constituted a clear, open, and unequivocal disagreement with Slick’s trial strategy. See In re Burton, 40 Cal.4th 205, 52 Cal.Rptr.3d 86, 147 P.3d 1014, 1028 (2006) (explaining that, in order to prove a Frierson violation, “a defendant must clearly and openly—and, thus, unequivocally—express a desire to present a particular defense”). -

. In particular, the district court noted: "Ms. Kleiribauer and Petitioner both had clear recollections of the conversations they had with each other and with Mr. Slick. On the other hand, Mr. Slick remembered virtually nothing about his representation in this case.”

. The presumption of correctness applies "unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit”:
(1) that the merits of the factual dispute were not resolved in the State court hearing;
*1141 (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
(3) that the material facts were not adequately developed at the State court hearing;
(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
(7) that the applicant was otherwise denied due- process of law in the State court proceeding;
(8) or ... the Federal court on a consideration Of [the state court] record as a whole concludes that such factual determination is' not fairly supported by the record.
28 U.S.C. § 2254(d) (1994).

. For this reason, were Burton's petition governed by AEDPA, we would have to reject his Faretta claim. See Marshall v. Taylor, 395 F.3d 1058, 1061 (9th Cir,2005) (holding that the California rule for determining the timeli *1142 ness of Faretta motions was not contrary to the United States Supreme Court's holding in Faretta that a request made “weeks before trial” is timely).

. The trial court’s concern was simply wrong. It is true that California’s speedy trial statute required superior courts in felony cases to Bring defendants to trial within 60 days of the filing of charges. See 1982 Cal. Stat. 1801 (amending Cal.Penal Code § 1382). But the 60-day requirement was a limit on the government, not the defendant. Trial could be set on a date beyond the 60-day period "at the request of the defendant or with his consent, express or implied.” Id.
That Burton could consent to continuances beyond the statutory 60-day period was not unknown to the trial judge. On May 9—day 42 of Burton’s 60-day period—Slick requested a twó-month continuance to July 25. The judge instructed the prosecutor to "[tjake the waiver.” Burton then assented to the waiver, and the judge .granted the continuance, noting that July 25 "will be the forty-second day.”

. There is another, more significant difference between the California rule and the federal rule: the considerations under each rule are different. Compare Burton, 258 Cal.Rptr. 184, 771 P.2d at 1276 (courts must consider the quality of counsel’s representation of the defendant, the defendant’s prior proclivity to substitute counsel, the reasons for the-request, the length and stage of the proceedings, and the disruption or delay that would result from granting the request), with Fritz, 682 F.2d at 784-85 (courts must determine whether a request is a "tactic to secure delay” by considering whether a delay would prejudice the prosecution, whether the motion could have been raised earlier, and whether the events preceding the motion are consistent with a good -faith assertion of the Faretta right).

. Because we conclude that these exceptions to § 2254(d)'s presumption of correctness apply, we decline to reach Burton’s alternative argument that, under § 2254(d)(8), the California Supreme Court's finding is not fairly supported by the record.

. The referee did not mention the reason Burton gave for declining the interview. Dr. Ma-loney stated in his declaration that “[Burton] told me that he wanted nothing to do with Mr. Slick and was representing himself.” In the next sentence, Dr. Maloney added that he was later able to interview' Burton regarding his background.
Nor did the referee mention that a week before Dr. Maloney first attempted to interview Burton, Burton cooperated with a different expert, Dr. Kaushal Sharma. Burton told Dr. Sharma he was innocent, and Dr. Sharma reported to Slick that if Burton's claim was true, there was nothing to support a mental state defense.

. The dissent accuses us of misconstruing Fritz when we discuss whether Burton had a “sole purpose” of delay. Dissent Op. 1164 n. 3. The problem with the dissent's assertion is that it ignores the important distinction drawn in Fritz itself: that “[d]elay per se is not a sufficient ground for denying a defendant’s -constitutional right of self-representation.” 682 F.2d at 784. Instead, our framing of the issue is nothing more than a recognition that nearly all Faretta requests will have an inherent component of delay, and the courts’ task is to sift between Faretta requests with “bona fide reasons” underlying them, and those motivated merely by a desire to delay for delay’s sake. Id.

. We affirm the district court’s crediting of these statements, which Kleinbauer made in one .of her declarations during the course of Burton’s postsentencing litigation. While the referee did conclude that Kleinbauer’s testimony at the reference hearing was “virtually[1] non-existent” and that Kleinbauer "tried to shade her answers” at the reference hearing in Burton's favor, the referée nevertheless relied on Kleinbauer’s statements in her post-sentencing .declarations, noting that “[those] declarations were accurate when made.” The referee never concluded that these statements, or any of Kleinbauer’s other statements that we discuss, lacked credibility.

. Faretta established that “a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so.” 422 U.S. at 807, 95 S.Ct. 2525. Subsequently, both the Ninth Circuit and the California Supreme Court held that the invocation of that right must be timely. See Maxwell v. Sumner, 673 F.2d 1031, 1036 (9th Cir.1982); California v. Windham, 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187, 1191 (1977).