**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DWIGHT TAMPLIN, JR.,
*Petitioner-Appellant*,

v.

WILLIAM MUNIZ, Warden,
*Respondent-Appellee.*

No. 16-15832

D.C. No.
1:12-cv-01633-AWI-SKO

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted October 16, 2017
San Francisco, California

Filed July 6, 2018

Before: Michael Daly Hawkins and William A. Fletcher,
Circuit Judges, and John A. Kronstadt,[*] District Judge.

Opinion by Judge W. Fletcher;
Dissent by Judge Hawkins

---

[*] The Honorable John A. Kronstadt, United States District Judge for the Central District of California, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel reversed the district court's judgment denying California state prisoner Dwight Tamplin, Jr.'s petition for a writ of habeas corpus, and remanded with instructions to grant the writ, in a case in which Tamplin argued that his 25-years-to-life Three Strikes sentence was obtained in violation of his Sixth Amendment right under *Faretta v. California*, 422 U.S. 806 (1975).

Reviewing under the Antiterrorism and Effective Death Penalty Act the state habeas court's decision that Tamplin's *Faretta* claim was meritless, the panel held that the state court's two conclusions—that Tamplin's request to represent himself was equivocal, and that Tamplin waived his Sixth Amendment right by not continuing to object after a public defender was reappointed to represent him—were clearly contrary to established Supreme Court law.

Reviewing de novo, the panel held that Tamplin's request to represent himself was timely; that Tamplin's appellate counsel rendered constitutionally deficient performance by failing to raise Tamplin's compelling *Faretta* claim; and that Tamplin was prejudiced by counsel's deficient performance.

Dissenting, Judge Hawkins wrote that Tamplin has not established that the state court's decision was in direct and irreconcilable conflict with Supreme Court precedent, and has

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

not shown that the state court ruling applying *Faretta* was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

## COUNSEL

Katherine L. Hart (argued), Fresno, California, for Petitioner-Appellant.

David Andrew Eldridge (argued), Deputy Attorney General; Tami M. Krenzin, Supervising Deputy Attorney General; Michael P. Farrell, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Sacramento, California; for Respondent-Appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

Dwight Tamplin appeals the denial of his petition for a writ of habeas corpus. He argues that his twenty-five-years-to-life sentence imposed under California's Three Strikes sentencing law was obtained in violation of his Sixth Amendment right under *Faretta v. California*, 422 U.S. 806 (1975), and that he is entitled to relief under 28 U.S.C. § 2254. We agree.

## I. Factual and Procedural Background

On May 21, 2004, a California Highway Patrol officer stopped Tamplin and three other African-American men for a traffic violation. The officer called for backup after he smelled burned marijuana in the car and observed indicia of gang affiliation. Upon searching the car, officers discovered a .38 caliber handgun and a .357 caliber revolver. *People v. Tamplin*, No. F050103, 2007 WL 1365988, at *1 (Cal. Ct. App. May 10, 2007). Tamplin was charged in state court with possession of a firearm by a felon. Cal. Pen. Code § 12021(a)(1). He was also charged with a street gang enhancement under Cal. Pen. Code § 186.22(b)(1), as well as four "strikes" based on his prior conviction for four criminal offenses on May 28, 1991.

Over the course of the next nine months, Tamplin cycled through three appointed attorneys. On February 10, 2005, while represented by public defender Kathleen Hall, Tamplin successfully moved to represent himself. Tamplin asked for appointment of "assistant counsel" five days later, but his request was denied. He represented himself without incident

for the next four months. Trial was scheduled to begin on July 14, 2005, five months after Hall had last represented him.

On June 22, Tamplin appeared in California Superior Court with privately retained attorney Greg Morris. A minute order shows that Morris requested a continuance to file a motion to substitute counsel. Two boxes on the minute order are checked. Under the heading "ARRAIGNMENT-VOP," a box labeled "Sub in" is checked, with the name "Greg Morris" handwritten in the blank following the box. Below that, under the heading "MOTIONS," a box labeled "Granted" is checked, with the following handwritten text next to it: "Mr. Morris requests a cont on the motion to file a sub into case." That motion was never filed, for two days later, on June 24, Morris was no longer eligible to practice law. His membership in the state bar was suspended in advance of disciplinary proceedings that would ultimately end in his disbarment for misappropriation of client funds.

At a June 30 hearing, the trial court informed Tamplin that Morris had been suspended from practice and could not represent him. The court asked Tamplin how he wished to proceed. Tamplin immediately responded that he wished to continue to represent himself, and he completed a second waiver of counsel form.

On July 8, the court held a hearing on Tamplin's request to continue to represent himself. The court asked Tamplin if he wished "to return to your status in representing yourself in this case." Tamplin stated that he did. The court reviewed the waiver of counsel form that Tamplin had completed on June 30 and thoroughly explained the rights that Tamplin would forfeit. Tamplin confirmed that he understood. The

court stated that it would "make an additional inquiry," whether Tamplin would be prepared for trial which was still set for July 14. Tamplin replied, "Nope."

The court then inquired as to why Tamplin wished to represent himself. Tamplin responded, "Not comfortable—I'm not comfortable with anybody that's in the public defender's office or anybody else that's been hiring [sic] me. They haven't been representing me, they haven't filed anything, they haven't done nothing that's going to help my case. I'm the only one who has filed anything and I'm the only one that has done anything that is going to help my case. Everybody else has done nothing." The court pointed out that Tamplin had hired his own attorney. Tamplin explained that he had attempted to hire a private attorney because "that's what I felt I needed to do at the time." Now that it turned out that Morris, whom Tamplin had already paid, was not available, Tamplin explained that he felt that he was "going to give myself the best representation without feeling like I didn't do everything that I could to fight for me."

The court again asked Tamplin why he attempted to retain a private attorney. Tamplin responded, "I hired an attorney at that time . . . because I was able to come up with the funds, but also he had insight on my case and he—he had something that I felt that I really couldn't do at the time and I was like well—actually, he was supposed to be co-counsel . . . . [H]e was supposed to make the objections or the things that I didn't actually catch and follow as far as following the Rules of Court, that's what was supposed to be going on . . . ." After a further exchange, Tamplin reiterated, "I'm representing me now." The court confirmed that Tamplin would not be ready for trial in six days. Tamplin stated that

he would not, because he needed to file more pretrial motions.

The court then held that Tamplin would not be allowed to represent himself. It stated, "In this case, given that he desired counsel less than three weeks ago and hired counsel to assist him, the court need not make any inquiry other than that, or delve any further as to those reasons why he wanted counsel, but obviously he wanted counsel to do things he could not do at trial . . . ." The court stated that it would not permit Tamplin to proceed *pro se*, "finding that the timeliness is a substantial factor, along with the equivocalness and that the court finds that it is an equivocal demand based on that request for counsel and hiring of counsel on June the 22nd, 2005." Tamplin responded, "[Y]ou're going to violate my due process rights which you just did and by denying my *pro per* status, which is—I'm granted by law, and you're doing it—" The court cut him off: "You don't know the law sir." Tamplin replied, "I don't have to know it that much to know that you are violating my due process rights, what you're doing now."

The court gave Tamplin the choice to hire his own attorney or to accept a public defender. Tamplin stated, "I told you I don't want no public defender, none of the ones that you are going to appoint. It is going to be a conflict." The court asked if Tamplin could afford a private attorney. He responded, "Well, if you order my money back [from Morris], I can hire one." At the end of the July 8 hearing, after telling Tamplin that it lacked the authority to order Morris to return the money so he could hire private counsel, the court denied his request to represent himself and re-appointed public defender Hall.

The court continued the trial for six months. The state habeas court later wrote that the court "continued the trial date to give petitioner's new counsel time to prepare." The trial court's action on July 8 makes clear that, no matter what happened, the trial was almost certainly not going to begin on July 14. Tamplin had indicated that he needed a continuance. His re-appointed counsel, Hall, also needed a continuance.

At trial, Tamplin was convicted under California's felon-in-possession statute and was sentenced to forty-five years to life under California's Three Strikes sentencing law. On direct appeal, the Court of Appeal affirmed his conviction but reduced his sentence to twenty-five years to life. Tamplin's appointed appellate counsel on direct appeal failed to raise his *Faretta* claim.

In a *pro se* habeas petition to the California Superior Court, Tamplin argued that his appointed appellate counsel was ineffective for failing to raise his *Faretta* claim. The state habeas court held that appellate counsel was not ineffective in failing to raise the claim because Tamplin's *Faretta* rights were not violated. The court based its decision on two grounds. First, Tamplin had not unequivocally requested to represent himself: "[P]etitioner's hiring of Mr. Morris after the first *Faretta* motion had been granted indicates that petitioner was not unequivocal in his desire to represent himself. Instead, it appears that he was simply searching for a compatible attorney." Second, Tamplin had waived his Sixth Amendment right by acquiescing in the trial court's denial of his *Faretta* request: "Petitioner had at least six months after the denial of the *Faretta* motion in which to object to the appointment of new counsel, but he failed to do so."

Tamplin filed a habeas petition in the California Court of Appeal which was denied without comment. He filed a habeas petition in the California Supreme Court, which was also denied without comment. Tamplin then filed a habeas petition in federal district court.

## II. Standard of Review

"We review the district court's denial of [a] § 2254 habeas corpus petition de novo." *Deck v. Jenkins*, 814 F.3d 954, 977 (9th Cir. 2016).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this petition. *See Lindh v. Murphy*, 521 U.S. 320, 322 (1997). "Under AEDPA, '[w]e review the last reasoned state court opinion[.]' " *Visciotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016) (quoting *Musladin v. Lamarque*, 555 F.3d 830, 834–35 (9th Cir. 2009)). The last reasoned opinion in this case was the written order of the California Superior Court on state habeas.

When a state court adjudicates a claim on the merits, "relief may be granted only if the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the state court decision rests on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). "[A] state-court decision is contrary to [Supreme Court] precedent if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law . . . [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite] result

. . . ." *Williams v. Taylor*, 529 U.S. 362, 405, 389 (2000). A state court unreasonably applies Supreme Court precedent "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Mann v. Ryan*, 828 F.3d 1143, 1151 (9th Cir. 2016) (quoting *Williams*, 529 U.S. at 413) (internal alterations omitted). "We may only hold that a state court's decision was based on an unreasonable determination of the facts if 'we are convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.' " *Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)).

"If we determine . . . that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts, we evaluate the claim de novo . . . ." *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014). We review de novo if the state court failed to reach the merits of a properly raised issue. *Visciotti*, 862 F.3d at 760.

### III.  Discussion

### A.  *Faretta*

In *Faretta v. California*, 422 U.S. 806, 807 (1975), the Supreme Court held that the Sixth Amendment guarantees criminal defendants the right to represent themselves. Faretta was charged with a felony in a California Superior Court. Like Tamplin, Faretta was originally represented by a public defender. *Id*.  Also like Tamplin, Faretta feared that his

public defender would not represent him adequately. *Id*. He explained to the Superior Court that he wished to represent himself because the public defender's office serving his community "was 'very loaded down with . . . a heavy case load.' " *Id.* He objected to the public defender's office specifically, not to defense attorneys in general. Indeed, Faretta asked three times during his court proceedings that he be appointed an attorney other than a public defender. *Id.* at 810 n.5. The trial court initially granted Faretta's request to represent himself, but not before warning Faretta that he did not "know [the] ground rules" of court procedure. *Id.* at 808 n.2. Later, the court revoked Faretta's *pro se* status after he incorrectly answered its inquiries about the rules of evidence and procedure on voir dire. *Id.* at 808–09 & n.3.

The Supreme Court held that the State had violated Faretta's Sixth Amendment right to represent himself. The Court acknowledged that "[w]hen an accused manages his own defense, he relinquishes, as a purely factual manner, many of the traditional benefits associated with the right to counsel." *Id.* at 835. The Court nonetheless held that when a criminal defendant—even one lacking in the "skill and experience of a lawyer"—is "made aware of the dangers and disadvantages of self-representation," he must be permitted to represent himself. *Id.* "Weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." *Id.* "In forcing Faretta, under these circumstances, to *accept against his will a state-appointed public defender*, the California courts deprived him of his constitutional right to conduct his own defense." *Id.* at 836 (emphasis added).

### B. Superior Court's Decision on State Habeas

The Superior Court on state habeas concluded for two reasons that Tamplin's *Faretta* claim was meritless, and that appellate counsel was therefore not ineffective in failing to raise it.  First, the court concluded that Tamplin's request to represent himself was equivocal.    Second, the court concluded that Tamplin waived his Sixth Amendment right by acquiescing in the trial court's appointment of the public defender to represent him.  Both conclusions were clearly contrary to established Supreme Court law.  We take these conclusions in turn.

### 1.  Unequivocal Request

The state habeas court concluded that Tamplin's desire to hire private counsel rendered equivocal his request to represent himself.  This conclusion is clearly contrary to *Faretta*.  As we discuss in detail below, Tamplin did not make a new *Faretta* request on June 22 and July 8.  He had been representing himself since February 10, and he sought only to continue that self-representation.  It may be that the clarity required for an entirely new *Faretta* request is greater than for a request to continue an uninterrupted self-representation.  However, we need not address that question, for Tamplin's request was unambiguous under any standard.

A criminal defendant's unsuccessful attempt to hire private counsel does not make equivocal his request to represent himself if the only alternative to self-representation is representation by a public defender.  This is clear from *Faretta* itself.    Faretta moved three times for the "appointment of a lawyer other than the public defender," clearly indicating that he did not object to being represented.

*See Faretta*, 422 U.S. at 810 n.5. Indeed, he *wanted* to be represented. His only objection was to representation by a public defender. *See id.* at 807. When presented with the choice of representing himself or being represented by a public defender, Faretta chose to represent himself. The Supreme Court held that the state court violated Faretta's Sixth Amendment right "[i]n forcing Faretta . . . to accept against his will *a state-appointed public defender*." *Id.* at 836 (emphasis added).

Tamplin's case is indistinguishable from Faretta's. His request to represent himself rather than be represented by a public defender was unequivocal. When asked on June 30 how he wished to proceed when he learned that private counsel Morris had been suspended and could not represent him, Tamplin immediately declared his desire to proceed *pro se*, and he executed on the spot a written waiver of rights form. More than a week later, at the July 8 hearing, he was strongly, even fervently, committed to self-representation. He consistently maintained his position through a long and thorough colloquy.

Tamplin's exchange with the trial court on July 8 reads like an exercise in how many ways a defendant can say that he wants to represent himself. In succession: (1) "[Y]ou don't wish to have counsel appointed to represent you?" "No." (2) "[I]t's your request to return to your status in representing yourself in this case . . . ?" "Yes." (3) "I'm going to represent myself . . . ." (4) "I have a right to go *pro per* at this time. I'm trying to go back to *pro per*." (5) "I'm going to give myself the best representation without feeling like I didn't do everything that I could to fight for me." (6) "I'm representing me now." "You're still represented by Mr. Morris." "All right. Then I'll make that request." (7) "I

told you I don't want no public defender, none of the ones that you are going to appoint." Then, immediately after the trial court denied his request, Tamplin twice accused the court of violating his due process rights.

Tamplin recognized in his colloquy with the trial court that an attorney could provide assistance in technical and procedural matters, but that hardly made his request equivocal. Under *Faretta*, a defendant's "technical legal knowledge . . . [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* at 836. "A defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation . . . ." *Id.* at 835. A defendant's choice to represent himself necessarily entails a weighing of pros and cons. Foregoing an attorney will virtually always mean that the defendant will have the responsibility to manage aspects of trial for which he is ill-equipped. A defendant may understand these limitations but still prefer to represent himself. Indeed, he must acknowledge his limits in order to waive his right to counsel. A *Faretta* waiver is not competently made unless the defendant understands the "dangers and disadvantages of self-representation." *Id*. Here, Tamplin conceded that there were technical aspects of the trial with which he would necessarily be unfamiliar but still maintained that he was "going to give myself the best representation without feeling like I didn't do everything that I could to fight for me." Under *Faretta*, the state court was required to respect Tamplin's wish, whether or not he could "personally handle" complying with the rules of court.

## 2.  Waiver by Acquiescence

After the state trial court denied Tamplin's request to represent himself on July 8, and after Tamplin made clear his objection to the court's ruling, Tamplin did not object again. The state habeas court held that because Tamplin did not object again, he had waived his Sixth Amendment right by "acquiescing" in the court's ruling.  This holding is clearly contrary to *Faretta*.

*Faretta* held, without qualification, that a defendant who makes an unequivocal and timely request to represent himself has a Sixth Amendment right to self-representation, and that a denial of self-representation in the face of such a request is a violation of that right.  422 U.S. at 835–36.  The Sixth Amendment violation is complete at the time of the court's denial.

The state habeas court relied on *People v. Rudd*, 63 Cal. App. 4th 620 (1998), in concluding that Tamplin's acquiescence constituted a waiver of his Sixth Amendment claim.  The California Court of Appeal held in *Rudd* that a defendant who makes a timely and unequivocal request to represent himself can subsequently waive his Sixth Amendment right by acquiescing in counsel's representation by failing to continue to object.  If the defendant acquiesces and thereby waives his right to self-representation, the Court of Appeal held, his Sixth Amendment rights have not been violated.  *Id.* at 630–31.  The Court of Appeal in *Rudd* based its acquiescence rule on its reading of *Faretta* and *McKaskle v. Wiggins*, 465 U.S. 168, 172 (1984).  The state habeas court, relying on *Rudd*, held that Tamplin had acquiesced in the reappointment of public defender Hall.

The Court of Appeal in *Rudd* relied on the following sentence from *Faretta*: "Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense." *Rudd*, 63 Cal. App. 4th at 630–31 (emphasis omitted) (quoting *Faretta*, 422 U.S. at 821). The *Rudd* court read that sentence in isolation from its context. The context in *Faretta* is as follows:

> [W]hen a defendant *chooses* to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. This allocation can only be justified, however, by the defendant's consent, *at the outset, to accept counsel as his representative*. An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has *acquiesced in such representation*, the defense presented it not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.

422 U.S. at 820–21 (first, second and third emphases added). This passage says, unsurprisingly, that a criminal defendant has "acquiesced in such representation" when he "chooses" "at the outset, to accept counsel as his representative." The passage has nothing to do with a defendant's behavior after he has unequivocally requested to proceed *pro se*, and after the trial court has improperly refused that request. The passage cannot be reasonably interpreted to mean that a defendant's failure to continue to object after the trial court

has violated *Faretta* constitutes acquiescence in the appointment of a public defender.

In *McKaskle*, the Supreme Court held that the participation of stand-by counsel is not inconsistent with the Sixth Amendment right of a criminal defendant to represent himself or herself. In the case before us, stand-by counsel is not at issue.

The state habeas court's conclusion that Tamplin waived his Sixth Amendment right by not continuing to object after public defender Hall was re-appointed was clearly contrary to *Faretta*.

### 3. Timeliness of Tamplin's Request

On appeal to us, the State argues that Tamplin's request to represent himself was untimely.

### a. AEDPA Deference or De Novo Decision

A preliminary question is whether we give deference under AEDPA to the state habeas court on the question whether Tamplin's request was timely, or whether we address that question de novo. Our dissenting colleague contends that we must give deference. We disagree.

It is settled law that we give deference to the latest reasoned decision of a state court. *Visciotti*, 862 F.3d at 760. However, if the last reasoned decision did not address a properly raised question, we decide the question de novo. *Id.*; *Frantz v. Hazey*, 533 F.3d 724, 738 (9th Cir. 2008) (en banc) ("We confine our § 2254(d)(1) analysis to the state court's *actual* decisions and analysis. . . . Indeed, if we were to defer

to some hypothetical alternative rationale when the state court's actual reasoning evidences a § 2254(d)(1) error, we would distort the purpose of AEDPA." (emphasis in original)); *cf. Harrington v. Richter*, 562 U.S. 86, 98 (2011) (when state court issues an unreasoned summary order deciding a case on the merits, we assume that the court resolved questions necessary to its decision). The state habeas court, which provided the last reasoned decision, gave two reasons for its decision, either of which, if valid, sufficed to support its result. The court did not need to reach the question whether Tamplin's request was timely, and it did not do so.

The state habeas court explained its decision in a five-page written order, containing just under four pages of actual text. The first page of text recites the procedural history of the case. The second page quotes passages from California court decisions interpreting *Faretta*.

The order then recites the facts as follows:

> In the present case, the petitioner originally moved to represent himself in February of 2005, and the court granted the motion. Then, in June of 2005, petitioner hired Greg Morris to represent him. Mr. Morris apparently substituted into the case on June 22, 2005.

> About one week later, on July 8, 2005, petitioner moved to represent himself. However, the trial court denied the Faretta motion, finding that the motion was equivocal and that "timeliness is a substantial factor"

because the trial date was only about six days away. The court then went on to appoint counsel for petitioner and later continued the trial date to give petitioner's new counsel time to prepare. The case was not ultimately tried until January of 2006, about six months later.

The next paragraph begins, "Under these circumstances, the court finds that petitioner's right to self-representation was not violated." That sentence is followed, in the same paragraph, by fourteen lines of text in which the state habeas court held that Tamplin waived his right to represent himself by acquiescing in the trial court's ruling. The next paragraph contains eight lines of text in which the state habeas court held that Tamplin was equivocal in his request to represent himself. That paragraph is followed by a final paragraph of a single line stating, "The petition is denied."

The order thus gives two clearly articulated reasons for holding that Tamplin's Sixth Amendment right was not violated. The order nowhere says that Tamplin made his self-representation request too late, or gives that as a reason supporting its holding. We accordingly review de novo the timeliness of Tamplin's request.

### b.  Timeliness of Tamplin's Request

For the reasons that follow, we conclude that Tamplin's request to represent himself was timely. As just noted, we decide this question de novo, but we would reach the same decision even if we were to give deference under AEDPA. We reach this decision on two grounds.

### (1) Tamplin Continuously Represented Himself from February 10 Forward

It is undisputed that Tamplin made an unequivocal request to represent himself on February 10, 2005, and that this request was granted. It is also undisputed that Morris appeared in the trial court on June 22; that the minute order for that day states that Morris requested a continuance in order to file a motion to substitute in as counsel; that Morris never made the motion for which he was granted a continuance on June 22; and that on June 24 Morris was suspended from practice. Because Morris never made the motion for which he was granted a continuance, he never legally represented Tamplin in the trial court. It necessarily follows that Tamplin represented himself in the trial court continuously from February 10 onward, and that he did not make a new request on June 30 to represent himself when he learned that Morris had been suspended from practice.

Our dissenting colleague contends that Morris was actually substituted in as Tamplin's counsel. We disagree. Our dissenting colleague characterizes the minute order of June 22 as "not a picture of clarity," and writes that minute orders "entered by the court on June 30 and July 8 reflect Morris as the defense counsel of record and all parties, including Tamplin, proceeded as though Tamplin were represented by counsel (Morris)." Diss. at 28. This is not a full description of the minute orders of June 30 and July 8.

Greg Morris's name is preprinted at the top of both minute orders, but the bodies of the minute orders tell a different story. The body of the June 30 minute order has two handwritten notations. Next to the heading "MOTIONS," is handwritten, "Deft requests to go Pro Per / Crt advises deft.

that a waiver needs to be made." Below that, next the heading "OTHER," is handwritten, "Mr. Morris is not eligible to practice law." The body of the July 8 minute order has several handwritten notations. Under the heading "ARRAIGNMENT-VDP," two boxes labeled "(Re)appt." and "ADO/" are checked, and next to the boxes is handwritten the name "K. Hall." Under the same heading, a box labeled "Relieved" is checked, and next to the box is handwritten the name "G. Morris." Below that, under the heading "MOTIONS," a box labeled "denied" is checked, and next to the box is handwritten "Faretta mtn (time substantial factor)." Finally, below that, under the heading "OTHER" is handwritten "Greg Morris – unable to practice law at this time."

Far from showing that the parties treated Tamplin as "represented by counsel (Morris)," the June 30 and July 8 minute orders show that the court understood that Tamplin was not—indeed, could not be—represented by Morris. The June 30 minute order could not have been clearer: "Mr. Morris is not eligible to practice law." During the July 8 hearing, the trial court said, "Mr. Tamplin is present and has expressed a desire [to represent himself] given that Mr. Morris is unable to represent him at this time . . . ." The only suggestion in the body of either minute order that Morris ever represented Tamplin in the trial court is the check in the July 8 minute order of the box labeled "Relieved." In light of what had come before, that check cannot be reasonably read to indicate that Morris had ever successfully moved in the trial court to represent Tamplin.

(2) Timely Request on June 30

Even if we assume, counterfactually, that Tamplin made a new request to represent himself on June 30, as distinct from a request to continue to represent himself, his request was timely.

In the typical case of an untimely *Faretta* request, the defendant is represented by counsel when the request is made. In that circumstance, granting a *Faretta* motion would result in a delay that would not occur if counsel were permitted to continue to represent the defendant. A *Faretta* request must therefore be made in a timely manner. But this is not that typical case. On June 30, when Tamplin indicated that he wished to continue to represent himself, he had already been representing himself for over four and a half months. He had appeared in the trial court with Morris on June 22 when Morris was granted a continuance to make a motion to substitute in as counsel (a motion that was never made), and he learned on June 30 that Morris could not represent him. As discussed above, Tamplin indicated unambiguously on June 30 that he wished to continue to represent himself.

For purposes of argument, we are willing to assume that Tamplin's request on June 30 was a new request, but, as we note, this was far from the typical *Faretta* request. We are also willing to assume that July 14, the formally scheduled date, was a realistic trial date, but, as we note, the court continued the trial for six months after he denied Tamplin's request to represent himself. On these assumptions, Tamplin made a new request to represent himself on June 30, exactly two weeks before the scheduled trial date of July 14. Even on these assumptions, Tamplin's request was timely.

In *Moore v. Calderon*, 108 F.3d 261 (9th Cir. 1997), *overruled on other grounds in Williams v. Taylor*, 529 U.S. 362 (2000), we held in a habeas case that a *Faretta* request made two weeks and two days before trial was timely. On the assumption that we should give AEDPA deference to the state court decision, we wrote:

> If the state court decision in this case was "contrary to" the Federal law clearly established by *Faretta*, then the writ may properly be granted. Indeed, the relevant facts is this case are identical to those in *Faretta*. Like Faretta, Moore made his request "weeks before trial."

*Id.* at 265. Under *Faretta*, as we have interpreted it in *Moore*, Tamplin's request was timely.

Even if the state habeas court had relied on untimeliness in denying habeas, we would not give AEDPA deference to that conclusion. As recounted above, the state court believed that Tamplin made his *Faretta* request on July 8. It wrote: "About one week later, on July 8, 2005, petitioner moved to represent himself." This is a clear factual error. Tamplin requested to represent himself on June 30, when he learned that Morris had been suspended and could not represent him. The hearing on Tamplin's request was on July 8, but he had made the request eight days earlier.

But even if the state habeas court had relied on untimeliness and even if we were to give AEDPA deference, we would interpret *Faretta* as we did in *Moore*. That is, we would conclude that the state habeas court reached a result clearly contrary to *Faretta*. *See Marshall v. Rodgers*, 569

U.S. 58, 64 (2013) ("[A]n appellate panel may, in accordance with its usual law-of-the-circuit procedures, look to circuit precedent to ascertain whether it has already held that the particular point in issue is clearly established by Supreme Court precedent . . . ."). *Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007), on which the dissent relies, contains only generalized observations about *Faretta* and does not engage with *Moore*. In *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005), we discussed *Moore* approvingly, in holding that a request made on the morning of trial was untimely. In the course of our discussion, we wrote, "[A]fter *Moore*, we know that *Faretta* clearly established some timing element, but we still do not know the precise contours of that element. At most, we know that *Faretta* requests made 'weeks before trial' are timely." *Id.* Though *Burton v. Davis*, 816 F.3d 1132, 1141 (9th Cir. 2016), was a pre-AEDPA case, we analyzed Burton's claim by asking, first, if the state court violated clearly established Supreme Court precedent, and second, if the state court violated Burton's *Faretta* rights under circuit precedent. We answered the first question by applying *Moore*. *Burton*, 816 F.3d at 1141 ("[W]e determined in *Moore* that, after *Faretta*, the Supreme Court had *clearly established* that a request to proceed pro se is timely if made 'weeks before trial.' *Moore*, 108 F.3d at 265." (emphasis added)).

## C. Ineffective Assistance of Counsel

The state habeas court denied Tamplin's ineffective assistance of appellate counsel claim solely on the ground that the underlying *Faretta* claim was meritless. It did not address whether appellate counsel would have been ineffective in failing to raise the claim if the claim were meritorious. We therefore perform the remainder of the

ineffective assistance of appellate counsel analysis de novo. *See Visciotti*, 862 F.3d at 760.

The Fourteenth Amendment's Due Process Clause guarantees a criminal defendant effective assistance of counsel, as defined in *Strickland v. Washington*, 466 U.S. 668 (1984), during his or her first appeal as of right. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail, the defendant must show, first, "that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue," and second, that he was prejudiced on account of the deficient performance, "which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal." *Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010).

Tamplin's counsel filed a declaration in the state habeas proceeding. He explained his decision not to raise the *Faretta* claim as follows:

> I had no tactical reason not to raise this claim in the initial appeal. In retrospect, it is clear that appellant made two *Faretta* motions, one in February 2005 and the second in July 2005. . . . I, however, labored under the mistaken belief that appellant had made only one *Faretta* motion, the one in February, which was granted. The transcript of the July 2005 motion was not in the record on appeal and I did not get a copy of it (from appellant's

wife) until yesterday, May 24, 2007. Once I
saw it I realized my mistake and took
immediate steps to bring this matter before the
court. The denial of the *Faretta* motion is a
potentially meritorious constitutional claim
that should have been raised in the initial
appeal. That it was not raised is due entirely
to my neglect . . . .

As the declaration shows, Tamplin's appellate counsel had no
tactical reason to refrain from raising the *Faretta* claim. He
simply made a mistake. The record should have alerted
counsel to the need to investigate further—especially since
denial of a defendant's rights under *Faretta* is "one of those
rare constitutional errors that requires automatic reversal
because it amounts to a structural defect." *United States v.
Withers*, 638 F.3d 1055, 1065 (9th Cir. 2011); *see also
Frantz*, 533 F.3d at 734.

Tamplin had a compelling claim to relief under *Faretta*.
*See supra*, Sections III.A–B. To say the least, counsel's
failure to raise that claim undermines confidence in the
outcome of Tamplin's appeal. *Strickland*, 466 U.S. at 694.
Tamplin was therefore prejudiced by his counsel's deficient
performance. *See Delgado v. Lewis*, 223 F.3d 976, 981 (9th
Cir. 2000) (finding that appellate counsel's failure to raise
meritorious claims on appeal prejudiced Delgado where
"there were deficiencies in the trial court proceedings
significant enough to warrant reversal").

Because appellate counsel's performance was
constitutionally deficient and Tamplin was prejudiced by his
counsel's errors, Tamplin was denied his Fourteenth

Amendment right to effective assistance of appellate counsel. *Smith*, 528 U.S. at 285.

## Conclusion

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to grant the writ of habeas corpus.

**REVERSED and REMANDED.**

---

HAWKINS, Circuit Judge, dissenting:

If this habeas petition were not governed by the AEDPA regime and Supreme Court authority as to when the relief requested here could or could not be granted, I might well agree with my colleagues. However, 28 U.S.C. § 2254(d) bars relief on a claim adjudicated on the merits in state court unless that court's decision was contrary to federal law then clearly established in Supreme Court holdings or involved an unreasonable application of such law, or was based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 98–100 (2011).

This court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). In analyzing claims, we are limited to the holdings, as opposed to the dicta, of Supreme Court cases that existed at the time the state court issued its ruling. *Id.*; *Howes v. Fields*, 565 U.S. 499, 505 (2012). However, we may not

issue the writ simply because we conclude that the relevant state court decision applied the law erroneously or incorrectly. *Lockyer*, 538 U.S. at 75–76. A state court decision precludes federal habeas relief so long as "fairminded jurists could disagree" as to the correctness of the state court's decision. *Harrington*, 562 U.S. at 101.

The majority first concludes the state court made an unreasonable factual finding that Morris was substituted as counsel for Tamplin. Although the original minute order is not a picture of clarity, as it both checks a box indicating that Morris was subbed in and also appears to state he was granted a continuance on "motion to file a sub into case," the next two orders entered by the court on June 30 and July 8 reflect Morris as the defense counsel of record and all parties, including Tamplin, proceeded as though Tamplin were represented by counsel (Morris) and that if Tamplin wished to change his mind, a new *Faretta* request would be necessary. So, too, do I.

The majority further concludes the California state courts unreasonably applied *Faretta* and thus violated his due process right to represent himself by denying the renewed request. 422 U.S. at 819; *see Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989) ("The Sixth Amendment's guarantee of assistance of counsel is unusual among constitutional rights in that it is also implicitly a guarantee of its opposite, the right to refuse counsel."). I am not convinced the issue is so clearcut, nor that the state court decision was objectively unreasonable under the circumstances.

Here, the state trial court gave two reasons for declining to grant Tamplin's second request to represent himself:

(1) the timing of the request, given its proximity to the scheduled trial date, and (2) that Tamplin had not been unequivocal, having appeared only a week or so earlier with a privately-hired attorney whom he indicated he had hired for assistance with matters he could not handle personally, especially dealing with rules of the court. On consideration of the state habeas petition, and contrary to the majority's interpretation of the record, the state habeas court fully agreed with the trial court's assessment and reasoning, *including the need to assert the right within a reasonable time before the commencement of trial*, but also specifically elaborated that Tamplin's attempted hiring of attorney Morris shortly before the request indicated he was not unequivocal in the desire to represent himself, but appeared to be searching for a compatible attorney.[1]

Under AEDPA, we may look only to Supreme Court decisions to determine what constitutes "clearly established federal law." *Murray v. Schriro*, 745 F.3d 984, 997 (9th Cir. 2014) ("Our precedent cannot be mistaken for clearly established Supreme Court law."). *Faretta* itself offers no guidance on the equivocal issue, nor does any Supreme Court precedent since it was decided. And this court has also

---

[1] The state habeas court cites both federal and state law regarding the timeliness of the motion, described *both* of the trial court's reasons for denying the request, including that "timeliness is a substantial factor" and then concluded that "*under these circumstances,*" the right to self-representation had not been violated. I view this as fully incorporating the trial court's reasoning and then elaborating further on its own. The habeas court also offered a third reason for denying Tamplin's petition, in that he did not subsequently renew his request to represent himself. I do not address the validity of this additional "acquiescence" reasoning because, as discussed below, I believe the first two reasons sufficient to uphold the ruling.

explained that although *Faretta* "clearly established some timing element," the "precise contours of that element" are unknown and "[a]t most, we know that *Faretta* requests made 'weeks before trials' are timely." *Marshall v. Taylor*, 395 F.3d 1058, 1061 (9th Cir. 2005).[2]

In light of the record as a whole, I cannot say that the California state court's decision was an unreasonable application of *Faretta*. The timing of the renewed request was very close to trial and Tamplin admitted he could not be ready in time for the scheduled trial date. As this court has noted, "*Faretta* does not articulate a specific time frame pursuant to which a claim for self-representation qualifies as timely." *Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007). Moreover, Tamplin's attempt to hire counsel shortly before trial, and for the acknowledged purpose of helping him with matters he did not feel he could personally handle, such as complying with rules of court, definitely calls into question the unequivocal nature of his request. *See id.* at 882–83 (Washington Supreme Court determination that petitioner's request was equivocal in light of the record as a whole was not objectively unreasonable). Although Tamplin was

---

[2] I acknowledge that in an older case, *Moore v. Calderon*, 108 F.3d 261, 264 (9th Cir. 1997), this court, applying pre-AEDPA standards, held that a state court denial of a defendant's motion to represent himself made two weeks and two days before scheduled trial was timely and granted the writ. In dicta, the court further suggested the result would be the same *if* the then-new AEDPA standards applied to the case, *id*. at 263–64, although Ninth Circuit law at the time clearly held they did not, *Jeffries v. Wood*, 103 F.3d 827 (9th Cir. 1996) (en banc), a holding subsequently confirmed by the Supreme Court in *Lindh v. Murphy*, 521 U.S. 320 (1997). I would not follow *Moore*'s dicta, and instead focus on subsequent cases actually governed by the AEDPA standard which have stated that *Faretta* "clearly established" no more than that requests made "weeks before trial" are timely. *See Stetson*, 504 F.3d at 884.

perhaps "unequivocal" *after* the point in time that he made his renewed request to represent himself, *Faretta* certainly does not preclude the trial court's consideration of the entire record, nor offer any guidance whatsoever on what might constitute equivocation by a defendant, since the defendant in *Faretta* never wavered in his desire to represent himself in the way Tamplin did here.[3]

In sum, I cannot find a holding of the Supreme Court that clearly requires relief under the circumstances present here, and its most recent pronouncements suggest otherwise. *See Kernan v. Cuero*, 138 S. Ct. 4, 8 (2017). In *Kernan*, the Supreme Court recently made clear that AEDPA does not permit: (1) granting relief where fairminded jurists could disagree with the reading of Supreme Court precedent, or (2) ordering relief when there was no Supreme Court decision clearly entitling the defendant to the relief he seeks, or (3) relying on circuit precedent, state court decisions, treatises, law review articles, or anything beyond established Supreme Court precedent for AEDPA purposes. *Id*. at 9. Cognizant of these parameters, I find it is at least debatable under *Faretta* whether Tamplin's renewed request was sufficiently timely and whether he was truly unequivocal in desiring to represent himself. Thus, in my opinion, Tamplin has not established that the state court's decision was "in direct and irreconcilable conflict with Supreme Court

---

[3] The majority points out that a footnote in *Faretta* indicates he attempted on three occasions to have the trial court appoint and pay for private counsel for him. 422 U.S. at 808 n.5. The significance of this fact is not discussed in the opinion. However, trying to get the court to pay for counsel of choice is still a step removed from what Tamplin did here–actually hiring such counsel and appearing in court with him shortly before trial, representing to the trial judge that he now desired such representation rather than continuing on *pro se.*

precedent," *Murray*, 745 F.3d at 997, nor has he shown that the state court ruling applying *Faretta* "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. I would affirm the district court's denial of the petition.