NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 8 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DOMONIC RONALDO MALONE, | No.    22-16671 |
| Petitioner-Appellee, | D.C. No. 2:18-cv-01146-RFB-NJK |
| v. | |
| BRIAN WILLIAMS, Warden; ATTORNEY GENERAL FOR THE STATE OF NEVADA, | MEMORANDUM[*] |
| Respondents-Appellants. | |

Appeal from the United States District Court
for the District of Nevada
Richard F. Boulware II, District Judge, Presiding

Argued and Submitted October 5, 2023
Las Vegas, Nevada

Before: RAWLINSON and OWENS, Circuit Judges, and PREGERSON,[**] District Judge.
Concurrence by Judge RAWLINSON; Dissent by Judge OWENS.

Respondents-Appellants appeal the district court's grant of habeas relief to

Petitioner-Appellee Domonic Ronaldo Malone ("Malone") pursuant to 28 U.S.C.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Dean D. Pregerson, United States District Judge for the Central District of California, sitting by designation.

§ 2254(d)(2). We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). We may only grant relief if the Nevada Supreme Court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011). Having reviewed the district court's grant of habeas relief de novo, *Wilkinson v. Gingrich*, 806 F.3d 511, 515 (9th Cir. 2015), we agree with the district court that habeas relief is warranted under § 2254(d)(2), and affirm.[1]

The Supreme Court has long recognized the "nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Faretta v. California*, 422 U.S. 806, 817 (1975). "[A]lthough [a defendant]

---

[1] We have frequently treated the equivocality of an invocation of the right to self-representation as a question of fact. *See, e.g.*, *United States v. Audette*, 923 F.3d 1227, 1234 (9th Cir. 2019); *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir.1994). Accordingly, we have analyzed § 2254 habeas cases raising similar issues under § 2254(d)(2). *See Stenson v. Lambert*, 504 F.3d 873, 882-883 (9th Cir. 2007). We need not determine whether 28. U.S.C. § 2254(e)(1) applies to this matter, as "it is difficult to imagine a case in which a court would find that a state court decision was 'an unreasonable determination of the facts,' but that the petitioner had not rebutted the "presumption of correctness by clear and convincing evidence." *Apelt v. Ryan*, 878 F.3d 800, 837 n.23 (9th Cir. 2017); *see also Murray v. Schriro*, 745 F.3d 984, 1001 (9th Cir. 2014).

may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." *Id.* at 834 (internal quotation marks omitted). A defendant's request to proceed without counsel must be unequivocal. *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). Periodic vacillations, however, will not "taint" later unequivocal waivers of counsel. *United States v. Audette*, 923 F.3d 1227, 1234-35 (9th Cir. 2019). Moreover, even a conditional waiver of counsel can be unequivocal. *United States v. Mendez-Sanchez*, 563 F.3d 935, 946 (9th Cir. 2009) ("A conditional waiver can be stated unequivocally, as for example when a defendant says in substance: 'If I do not get new counsel, I want to represent myself.' There is a condition, but the demand is unequivocal.").

Here, following numerous prior discussions and attempts by Petitioner to dismiss his appointed counsel, the trial court found that Petitioner knowingly and voluntarily waived his right to counsel in January 2010, and granted Petitioner self-represented status. Over the following eighteen months, Petitioner reaffirmed at least nine times, both orally and in writing, his continued desire to represent himself rather than accept the representation of his former counsel. On some of those occasions, Petitioner expressed a conditional desire to represent himself, explaining, for example, that "I try many times to get other attorneys, but I was denied . . . . So, therefore, the only option that I have is [self-representation]."

3

Similarly, when asked on one of numerous occasions whether he wanted a lawyer, Malone responded, "I did. Not the ones I got now. No sir."

Many of Petitioners' affirmations were far more strident. Petitioner agreed with the trial court, for example, that he was "hellbent" on representing himself, accused the trial court of trying to "overwhelm" him in hopes of forcing him to "somehow see the light and allow [former counsel] to lead him like cattle to the slaughter," and wrote that he was "more than ready and willing to fight to the point of death" rather than accept prior counsel. Indeed, Petitioner informed the trial court that he believed that appointed counsel "were trying to help the State murder me," and that his family would not cooperate with them.[2]

Apparently exasperated by Malone's repeated claims that he was forced into self-representation by the trial court's refusal to appoint different counsel, the trial court mischaracterized Petitioner's written memorandum as stating that Petitioner "did not want to represent [himself]," and revoked Petitioner's self-represented status on that basis, stating to Petitioner, "Your wish is granted," and cutting off any further discussion. As we have repeatedly explained, however, "[t]he fact that

_____

[2] Unfortunately, the trial court never held an in camera hearing or otherwise attempted to discern the full nature and extent of Petitioner's conflict with counsel. As early as 2009, Petitioner complained that his appointed counsel had misrepresented him, withheld certain discovery, and "used racist remarks." Although the trial court did make repeated inquiries into discovery issues, it did so only in open court, and never gave Petitioner any opportunity to discuss the specifics of his objections outside the presence of the prosecution.

some of [the defendant's] statements of his preference to proceed pro se were accompanied by expressions of his feeling 'forced' to do so does not render those statements equivocal." *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir. 1990); *see also Tamplin v. Muniz*, 894 F.3d 1076, 1084 (9th Cir. 2018) (discussing *Faretta*, 422 U.S. at 807, 810); *United States v. Allen*, 153 F.3d 1037, 1042 (9th Cir. 1998); *Adams*, 875 F.2d at 1444-45.

While Respondents-Appellants point to certain of Malone's conditional statements in isolation as evidence of equivocation, we must look to the entire record as a whole. *United States v. Hantzis,* 625 F.3d 575, 580 (9th Cir. 2010); *see also Stevens v. Davis*, 25 F.4th 1141, 1159 n.11 (9th Cir. 2022); *Burton v. Davis*, 816 F.3d 1132, 1157-58 (9th Cir. 2016); *Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007). Although we have rarely addressed the equivocality of a *Faretta* waiver in the AEDPA context, we did so in both *Stenson* and *Tamplin*. *See Stenson*, 504 F.3d at 881; *Tamplin*, 894 F.3d at 1082. In *Stenson*, we found a *Faretta* waiver equivocal where the defendant failed to persistently or "consistently [] maintain his desire to represent himself." *Stenson*, 504 F.3d at 884. That clearly was not the situation here, where Malone repeatedly and insistently stated, even if conditionally, that he wanted to represent himself. Indeed, Malone's efforts here far outstripped those of the defendant in *Tamplin*, where, reversing the district court's denial of habeas relief, we observed that the

5

defendant's statements in two hearings one week apart "read[] like an exercise in how many ways a defendant can say that he wants to represent himself." *Tamplin*, 894 F.3d at 1084.[3]

Having reviewed the entire record, we agree with the district court that "Malone was not equivocal about his desire to represent himself rather than have [appointed counsel] represent him. . . . Malone never wavered from that position after he was granted leave to represent himself. While Malone's request to represent himself was conditional in that he might have accepted different counsel, it was not equivocal because he was clear if [appointed counsel] was his only option for appointed counsel then he would represent himself." We further agree with the district court that "it is beyond any reasonable argument that Malone . . . felt forced to represent himself because the [trial] court denied his request for [other] counsel," and that the Nevada Supreme Court's determination that Malone's *Faretta* waiver was equivocal was therefore based on an unreasonable determination of the facts.

**AFFIRMED**.

---

[3] Malone never "asked for his attorneys back, and then changed his mind." Dissent at 2-3. Rather, Malone stated, "I did would like to have my counsel back," and made the "at this point in time" comment as part of his explanation that he might have wanted counsel back at some point in the past, had they not caused unnecessary delays. Moreover, Malone's statements were prompted by the trial court's question, stated in open court, "It probably would have been a good idea to have an attorney, wouldn't it[?]"

6

*Malone v. Williams*, Case No. 22-16671
**Rawlinson, Circuit Judge, concurring in the result:**

I concur in the result.

*Malone v. Williams*, No. 22-16671

OWENS, Circuit Judge, dissenting:

I respectfully dissent from the majority disposition. I cannot say Malone met the AEDPA standard. In formulating AEDPA, "Congress wished . . . to give effect to state court convictions to the extent possible under law." *Williams v. Taylor*, 529 U.S. 362, 386 (2000). To satisfy the "extremely deferential" AEDPA standard, *McDermott v. Johnson*, 85 F.4th 898, 909 (9th Cir. 2023), a state prisoner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "A state court's factual determination . . . is not unreasonable simply because we would have reached a different conclusion." *Ybarra v. Gittere*, 69 F.4th 1077, 1089 (9th Cir. 2023).

The majority concludes that the Nevada Supreme Court made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2) when it held that Malone's request for self-representation was equivocal. Majority Disposition at 2. But every case the majority relies on for its conclusion, except one, was decided either under the pre-AEDPA standard or outside the habeas context entirely. *See United States v. Audette*, 923 F.3d 1227 (9th Cir. 2019) (not habeas); *Burton v. Davis*, 816 F.3d 1132 (9th Cir. 2016) (pre-AEDPA habeas); *United*

1

*States v. Hantzis*, 625 F.3d 575 (9th Cir. 2010) (not habeas); *United States v. Mendez-Sanchez*, 563 F.3d 935 (9th Cir. 2009) (not habeas); *United States v. Allen*, 153 F.3d 1037 (9th Cir. 1998) (not habeas or *Faretta*); *United States v. Robinson*, 913 F.2d 712 (9th Cir. 1990) (not habeas); *Adams v. Carroll*, 875 F.2d 1441 (9th Cir. 1989) (pre-AEDPA habeas). In those cases, the petitioner's burden was different; he had to demonstrate he was entitled to habeas under a less deferential standard or merely that his request for self-representation was unequivocal. Our role in those cases was different too; we were free to weigh the factual record without the burden of deference under AEDPA. *See Stevens v. Davis*, 25 F.4th 1141, 1152 (9th Cir. 2022) ("Our role on federal habeas review is 'to guard against extreme malfunctions . . . not to apply *de novo* review of factual findings'" (citation omitted)).

The sole AEDPA case the majority relies on is distinguishable. In *Tamplin v. Muniz*, 894 F.3d 1076, 1084 (9th Cir. 2018), we granted habeas relief because the defendant never vacillated; his attempt to hire a private attorney was consistent with his position that he did not want a public defender. By contrast, the facts here are directly analogous to *Stenson v. Lambert*, 504 F.3d 873, 884 (9th Cir. 2007), where we denied relief because "all of Stenson's requests for self-representation were concessions that he really did not want to represent himself, but that he felt the court . . . [was] forcing him to do so." Here, Malone, unprompted, asked for

2

his attorneys back, and then changed his mind. He couched his requests with the phrase "at this point in time," even when the court directed him to answer with a simple "yes" or "no," implying that his position was subject to change. He told the court it was "denying [him] the right to . . . representation" by not appointing standby counsel that he approved of. He said he wanted a lawyer, but "[n]ot the ones I got now" and self-representation "wasn't technically [his] choice." *Stenson* court denied relief not because it necessarily agreed with the state court's conclusion that the request was equivocal, but because the state court's conclusion was "not objectively unreasonable." *Id.* The majority failed to do the same here.

To be sure, there are other facts that support the majority's position that Malone's request to represent himself was unequivocal. The Nevada Supreme Court could have come to a different conclusion with the same evidence. But the AEDPA standard is not whether we think the request was unequivocal but whether the state court's decision to the contrary was unreasonable. I cannot say that the support in the record is so vast that the state court's decision was unreasonable, so I respectfully dissent.